In re George **ROUSSOPOULOS** and Zoe **Roussopoulos,** Debtors.

Alan **NISSELSON, Esq.,** Plaintiff,

v.

George and Zoe **ROUSSOPOULOS** and Haralabos Livadiotakis, Defendants.

**Bankruptcy No. 192–16495–352. Adversary No. 195–1267–352.**

United States Bankruptcy Court, E.D. New York.

July 12, 1996.

Brauner Baron Rosenzweig & Klein by Alan Nisselson, New York City, for Plaintiff.

Robinson Brog Leinwand Reich Genovese & Gluck, P.C. by A. Mitchell Greene, New York City, for George Roussopoulos and Zoe Roussopoulos.

James O. Guy, Garden City, New York, for Haralabos Livadiotakis.

*DECISION ON MOTION TO VACATE DEFAULT AND MOTION FOR SUMMARY JUDGMENT*

MARVIN A. HOLLAND, Bankruptcy Judge:

This decision addresses a motion by the non-debtor defendant, Haralabos Livadiotak-

is (hereinafter, "Livadiotakis"), seeking a determination "pursuant to Rules 7004(b) and 7012(b) of the Federal Rules of Bankruptcy Procedure ("FRBP") that [his] time to answer did not expire because he was not 'duly served' with the complaint; and/or, FRBP Rules 9006(b)(1) and 7012(b) extending his time to answer up to and including September 3rd, 1995 on the grounds of excusable neglect; and/or, FRBP Rule 7055 and Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP") to vacate a default granted on September 13th, 1995, on the oral application of [the Trustee] in violation of FRCP 55(b)(2) for the Trustee had never served 'written notice of the application for judgment'; and/or FRBP Rule 7055 and FRCP Rule 55(c) to vacate the default ... on the grounds of good cause; ...." Also before this Court is a motion for summary judgment by the plaintiff, Alan Nisselson, Esq. as Chapter 7 Trustee of the debtors' estate (hereinafter, the "Trustee") seeking authorization for a sale of real property pursuant to 11 U.S.C. § 363(h).

For the reasons that follow, we vacate Livadiotakis' default and deny the Trustee's motion for summary judgment without prejudice to re-file in accordance with the following.

### FACTS

On July 29, 1992, George and Zoe Roussopoulos (hereinafter, the "Debtors") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (hereinafter, the "Code"). By order dated October 14, 1993, this case was converted to one under Chapter 7.

As of the commencement of this case, the Debtors and Livadiotakis owned equal interests in improved commercial real property located at 866 62nd Street, Brooklyn, New York (hereinafter, the "Property") as tenants in common. After an unsuccessful attempt to sell the Property pursuant to 11 U.S.C. § 363(b)(1), the Trustee, on June 15, 1995 commenced this adversary proceeding by filing a complaint seeking authorization to sell the Property pursuant to 11 U.S.C. § 363(h). A summons was issued by the Clerk of this Court on June 16, 1995.

Prior thereto, on or about May 7, 1995, Richard A. Osserman, Esq. (hereinafter, "Osserman") had filed a Notice Of Appearance in the case in gross which states, in pertinent part:

Richard A. Osserman ... appears in this proceeding for Livadiotakis, co-owner of property and creditor, and demands copies of all papers be served upon him and he receive notice of all proceedings including copies of all disclosure statements, plans of reorganization and financial statements.

According to the Trustee, on or about June 16, 1995, Deborah Markowitz, Esq., an associate with the Trustee's law firm, telephoned Osserman's office and spoke to Norman Horowitz, Esq., Osserman's associate. Affidavit In Response To Defendant Livadiotakis Motion To Vacate Default Judgment, p. 2, ¶ 5. According to Markowitz, she told Horowitz that the Trustee intended to commence an adversary proceeding to sell the Property pursuant to 11 U.S.C. § 363(h) and asked whether Osserman would be appearing for Livadiotakis in the adversary proceeding and whether he was authorized to accept service of the Summons and Complaint. *Id.* According to Markowitz, Horowitz stated that Osserman would represent Livadiotakis in the adversary proceeding and consented to accept service on his behalf. *Id.*

On June 22, 1995, the Trustee mailed the Summons and Complaint to Livadiotakis at the Property and to Osserman at his law office. According to Livadiotakis, on June 22, 1995, he resided at 374 87th Street, Apt. 1A, Brooklyn, New York and did not regularly conduct a business or profession at the Property. On that same day, the Trustee also filed the pending motion for summary judgment with the Clerk of this Court. On July 17, 1995, the Debtors filed their answer and on July 28, 1995, they filed an objection to the motion for summary judgment. On September 8, 1995, Livadiotakis filed an answer and an affirmation in opposition to the Trustee's summary judgement motion (hereinafter, "Livadiotakis' Affirmation") with the Clerk of this Court.

At a pre-trial hearing held on September 13, 1995, this Court found Livadiotakis' an-

swer untimely, granted the Trustee's oral motion for judgment by default against Livadiotakis, and directed the Trustee to "[s]ettle an order on two weeks notice."

On September 19, 1995, the Trustee filed a notice of settlement and proposed order of judgment by default (hereinafter, the "Proposed Order") against Livadiotakis with the Clerk of this Court. The settlement date for the Proposed Order was designated September 27, 1995. According to the affidavit of service submitted by the Trustee, the Notice of Settlement and Proposed Order were served by mail on September 18, 1995. On September 26, 1995, Livadiotakis filed an objection to the Proposed Order asserting that the Proposed Order had been submitted to this Court without the required two weeks notice and the Proposed Order was therefore not signed by this Court. This Court indicated such by marking the Notice of Settlement "Not Signed Insufficient Notice" on September 19, 1995.[1] Our review of the documents contained in the Clerk's file for this proceeding indicates that no further proposed order granting judgment by default has been submitted to this Court.

On September 27, 1995, a pre-trial hearing was held at which this Court took the Trustee's motion for summary judgment under submission. On October 4, 1995, Livadiotakis filed his motion.

1. The docket for this adversary proceeding as of March 18, 1996 indicates the following notation for September 19, 1995:
 Unsigned Order Re: Proposed Order of Judgment by Default against Defendant, Livadiotakis by Plaintiff, Alan Nisselson.

2. Fed.R.Bankr.P. 7004(b)(1) provides for service "[u]pon an individual ... by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." As previously noted, copies of the Summons and Complaint were mailed to Livadiotakis at the address of the Property. It is not clear from the documents submitted whether the Trustee is asserting that mailing copies of the Summons and Complaint were mailed to Livadiotakis at the Property constitutes proper service pursuant to Fed.R.Bankr.P. 7004(b)(1). According to Livadiotakis, the Trustee has conceded that such mailing does not constitute proper service. In the post-October 25, 1995 hearing pre-hearing statements submitted by Livadiotakis and the Trustee, the parties focus

## DECISION

### I. MOTION TO VACATE DEFAULT

The first issue we must address is Livadiotakis' claim of improper service.

Fed.R.Bankr.P. 7012(a) provides in pertinent part that "[i]f a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons...." It is undisputed that Livadiotakis did not serve his answer within 30 days of the purported service of the Summons. Livadiotakis claims, however, that since service was improper, he was not "duly served", and therefore the 30 day time limit of Fed.R.Bankr.P. 7012(a) is not applicable.

Fed.R.Bankr.P. 7004 governs service of a summons and complaint in adversary proceedings. Fed.R.Bankr.P. 7004(b)(8) provides in pertinent part that service may be made within the United States by first class mail:

(8) Upon any defendant, ... if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process.... [2]

The Trustee asserts that Osserman was an agent authorized to receive service of process. In support, the Trustee submits the direct testimony[3] of both Osserman and

on service under Fed.R.Bankr.P. 7004(b)(8) and the Trustee's purported service upon Osserman. In the Trustee's pre-hearing statement, he presents direct testimony going only to the issue of service upon Osserman as agent for Livadiotakis. The Trustee therefore appears to have abandoned any assertion that service was proper under Fed.R.Bankr.P. 7004(b)(1). Livadiotakis maintains that the Property was not a place where he "regularly conduct[ed] a business or profession" on the date the alleged service occurred. Nothing in the Trustee's pre-hearing statement refutes Livadiotakis' position. Accordingly, we will focus only upon whether service was proper under Fed.R.Bankr.P. 7004(b)(8). Even if our understanding of the parties contentions is inaccurate, however, based on our holding herein, the issue appears to be moot.

3. By a pre-trial order of this Court, the parties were directed to file statements which included, inter alia, "[t]he direct testimony of each witness to be called, except for rebuttal witnesses ... in question and answer form, sworn to by the wit-

Markowitz.[4] Osserman's testimony establishes that Horowitz, as an "attorney in [Osserman's] office, agree[d] to accept service of the summons and complaint on behalf of [Livadiotakis]" and that Osserman did in fact receive said process.

Livadiotakis' submits his own direct testimony which asserts, *inter alia,* that he never met Horowitz and that he "did not authorize Osserman to receive service of process."

■ As a general rule, "an attorney, solely by reason of his capacity as an attorney, does not thereby become his client's agent authorized by 'appointment . . . to receive service of process.' . . . What is necessary is that it appear that the attorney was authorized, either expressly or impliedly, to receive service of process for his client. And if such agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." *United States v. Bosurgi,* 343 F.Supp. 815, 817–18 (S.D.N.Y.1972) (footnotes omitted); *see also, Santos v. State Farm Fire and Cas. Co.,* 902 F.2d 1092, 1094 (2d Cir.1990) ("service of process on an attorney not authorized to accept service for his client is ineffective").

■ Nothing has been submitted by the Trustee that establishes Osserman's express authority to accept service of process on behalf of Livadiotakis. While Osserman's direct testimony establishes that he may have agreed to accept service, the Trustee never asked Osserman as part of his direct testimony whether he had the authority to do so. Moreover, while Markowitz alleges that she had asked Horowitz whether he was authorized to accept service of process prior to mailing the Summons and Complaint, direct testimony of Horowitz has not been submitted by the Trustee and Markowitz' testimony concerning Horowitz' alleged statements to her is inadmissible hearsay. Further, "[a]n agent's statement that he has been empow-

ered to accept process is insufficient, standing alone, to establish authorization to receive process." *Schultz v. Schultz,* 436 F.2d 635, 639 (7th Cir.1971).

■ Accordingly, we must determine whether Osserman had implied authority to accept service of process.

While "[c]ourts in New York are 'reluctant to lightly imply an [implied] agency' ", *Olympus Corp. v. Dealer Sales & Serv., Inc.,* 107 F.R.D. 300, 305 (E.D.N.Y.1985), it has been held that "[w]hen a defendant takes an active role in a Chapter 11 case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendant[ ]." *In re Reisman,* 139 B.R. 797, 801 (Bankr.S.D.N.Y.1992) (*citing In re Paddington Press, Ltd.,* 5 B.R. 343, 345 (Bankr. S.D.N.Y.1980)).

In *Reisman,* the late Judge Schwartzburg held that a creditor of the debtor had implicitly authorized counsel to accept service of process on its' behalf in an "integrally related" adversary proceeding because the attorney had taken an "active role" in the Chapter 11 case by filing a notice of appearance, moving to convert the case into a chapter 7 case, and making an application to examine the debtor. *Id.*

Our case is distinguishable from *Reisman.* First, in contrast to the notice of appearance filed herein, the notice of appearance filed in *Reisman* specifically stated that "the foregoing demand includes not only notices and papers . . . but also includes, without limitation, orders and notices of any application, motion, petition, *pleading,* request, *complaint,* or demand . . . that affects the Debtor or the property of the Debtor." *Id.* at 799. Second, and more significant, we do not have the active participation of the attorney as existed in *Reisman.* In *Reisman,* follow-

ness." This practice is specifically authorized by the Civil Justice Expense and Delay Reduction Plan adopted by the Board of Judges of the Eastern District of New York on December 17, 1991 pursuant to 28 U.S.C. § 471.

4. The effect of the direct testimony of Osserman and Markowitz submitted by the Trustee is ques-

tionable as the testimony is not sworn to as required by the pre-trial order. We nevertheless, for purposes of this decision, make the assumption that Osserman and Markowitz would, if needed, affirm the veracity of their "testimony" under oath.

ing the service of the summons and complaint, the creditor/defendant's attorney moved to have the case converted, applied for an examination of the Debtor and filed an answer on behalf of the creditor/defendant. In contrast, it appears that Osserman's only role in this case was filing the notice of appearance prior to the commencement of this adversary proceeding. Following his receipt of the Summons and Complaint, it appears that he had no participation in this proceeding. While Livadiotakis alleges that Osserman represented to him that he would file an answer, Osserman in fact, never did so. Livadiotakis' answer was filed by new counsel.

Thus, while "[t]he authority of an attorney to act as an agent for service of process need not be express and may be implied from surrounding circumstances indicating the intent of the principal (client)," *Olympus Corp. v. Dealer Sales & Service, Inc.*, 107 F.R.D. 300 (E.D.N.Y.1985), the limited involvement of Osserman was not sufficient to establish authority to accept service of process.

■ However, notwithstanding Osserman's apparent lack of authority to accept service of process, Livadiotakis has waived any defense based on insufficiency of process.

In *Santos v. State Farm Fire and Cas. Co.*, the Second Circuit Court of Appeals held that a defendant waived its right to challenge sufficiency of service by not properly raising it in its answer. *Santos*, 902 F.2d 1092. In *Santos*, as in our case, the plaintiff attempted service by delivering copies of a summons and complaint to the defendant's attorneys. It was undisputed that the attorneys were not authorized to receive service of process and the defendant claimed therefore that the purported service was not effective.

The Court of Appeals noted that a defense based on insufficiency of process could be made either by motion pursuant to Fed. R.Civ.P. 12(b)[5], provided that such motion is made prior to any responsive pleading, or if a motion is not made, in a responsive pleading.

*Id.* at 1095. The Court held that since the defendant answered the complaint immediately, its attempt to raise the sufficiency of service defense in a later motion was ineffective. *Id.* More significant, however, the Court of Appeals held that the defendant did not properly raise the defense of insufficiency of process in its answer. *Id.*

The Court of Appeals noted that "[n]either the original answer nor the amended answer did anything more than baldly state that the court lacked personal jurisdiction over [the defendant]. There was no mention of service of process at all, much less a specification of the manner in which service was insufficient." *Id.* at 1095–96. The Court distinguished between a defense based on lack of personal jurisdiction and one based on insufficiency of service of process, stating "these two defenses, while often related, are not identical.... Questions of personal jurisdiction go to 'whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant,' whereas questions of sufficiency of service concern 'the manner in which service has been made and not ... the court's power to adjudicate defendant's rights and liabilities....'" *Id.* (quoting, 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 at 578–79 (1969)).

The Court of Appeals stated that "[a] defense of 'absence of an agency relationship between the recipient of process and defendant,' is properly characterized as a defense of insufficiency of service of process, and is not necessarily revealed by an assertion simply that the court lacks the power to adjudicate the rights and liabilities of the defendant." *Id.* at 1095 (quoting, 5A C. Wright & A. Miller, Federal Practice and Procedure § 1353 at 578–79 (1969)). The Court further went on to say that "to the extent that a defense of lack of personal jurisdiction is based on delivery of the summons and complaint to a non-agent of the defendant, that basis should be clearly specified." *Id.*

---

**5.** Fed.R.Civ.P. 12(b) is made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7012.

In closing, the *Santos* Court did state that "on occasion the court, in entertaining a prompt motion to dismiss [a complaint], may properly look beyond an erroneous label and consider a defense of insufficient service of process asserted under the rubric of lack of jurisdiction, or vice versa, for presumably the papers supporting the motion will have elucidated the true nature of the defense." *Santos*, 902 F.2d at 1096. However, the Court found that "[s]uch liberal treatment was not, however, warranted in the present case" as the defendant "did nothing to alert [the plaintiff] promptly that its lack-of-jurisdiction claim was in fact a contention that service of process was insufficient." *Id.*

In our case, Livadiotakis' answer contains eight affirmative defenses, none of which mention service of process. The only affirmative defense relating to personal jurisdiction in any manner states that "Haralabos Livadiotakis does not consent to the jurisdiction of this Honorable Court." Moreover, Livadiotakis did nothing in this proceeding to promptly notify the Trustee that his lack-of-jurisdiction claim was in fact a disguised insufficiency of service of process claim such that the Trustee would have been afforded an opportunity to remedy the error. While he had numerous opportunities to promptly inform this Court and the Trustee that he was contesting sufficiency of process, Livadiotakis failed to do so. Of particular significance is the fact that at the September 13, 1995 hearing where this Court granted the oral application for default, Livadiotakis' attorney never mentioned insufficiency of process although he was provided with amply opportunity to do so. The only explanation or basis provided by Livadiotakis' attorney for the untimely answer was his statement "I am giving an explanation why the answer is late because the defendant had retained an attorney, and for whatever reason the attorney did not put the answer in." Not once at this hearing did the attorney maintain that his client had not been duly served. This argument was first presented only after the hearing (and after Livadiotakis submitted a number of documents in this proceeding, none of which mentioned service of process) in the present motion which had been filed on October 4, 1995. Thus, like *Santos*, this is not a case where "liberal treatment" is warranted.[6] Accordingly, under *Santos*, having failed to properly raise the defense of insufficiency of process in his answer, Livadiotakis has waived it. Therefore, we must deny that part of Livadiotakis' motion which seeks relief on the ground that his "time to answer did not expire because he was not 'duly served' with the complaint."

■ We now address that part of Livadiotakis' motion which seeks to vacate his default. Livadiotakis asserts that the Trustee's oral application violated Fed.R.Civ.P. 55, made applicable to this adversary proceeding pursuant to Fed.R.Bankr.P. 7055, as the Trustee had never served "written notice of the application for judgment [by default]."

Fed.R.Civ.P. 55(b)(2) provides, in pertinent part, "[i]f the party against whom judgment by default has appeared in the action, the party (or, if appearing by representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."

In this case, Livadiotakis appeared in the action by filing his answer prior to the September 13, 1995 hearing and therefore Fed.R.Civ.P. 55(b) entitled him to be served with written notice of the application for default prior to the hearing.

■ "The failure to provide 55(b)(2) notice, if the notice is required, is a serious procedural irregularity that usually justifies setting aside a default judgment or reversing for the failure to do so." *Wilson v. Moore and Assoc., Inc.*, 564 F.2d 366, 369 (9th Cir. 1977); *see also Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270 (6th Cir.1981) (The Court of Appeals held that although defendants made no formal appearance there was sufficient evidence of their intent to respond to plaintiff's claims so as to entitle them to written notice three days prior to

---

**6.** Moreover, whether and to what extent, the statement by Livadiotakis' attorney, quoted above, constitutes an admission of the alleged authorization of Osserman to accept service need not be addressed herein as it has not been raised by the Trustee, nor, given our holding herein, is it outcome determinative.

entry of default judgment and, in absence of such notice were entitled to an order setting aside default judgment).

■ Thus, our erroneous granting of the Trustee's oral application for judgment by default violated the provisions of Fed. R.Civ.P. 55(b) and must be vacated. Vacating the decision to grant judgment by default, however, is not tantamount to vacating the default itself.

■ Fed.R.Civ.P. 55(c) provides in pertinent part that "[f]or good cause shown the court may set aside an entry of default...." The Second Circuit Court of Appeals has "established three criteria that must be assessed in order to decide whether to relieve a party from default.... These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara, et al.*, 10 F.3d 90, 96 (2d Cir.1993).

■ Whether relief should be granted under Fed.R.Civ.P. 55(c) is left to the sound discretion of the court. *Id.* at 95. However, because of the strong preference for resolving disputes on the merits, "defaults are generally disfavored and are reserved for rare occasions...." *Id.* at 96. Thus, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause' ... should be construed generously." *Id.; see also Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) ("doubts are to be resolved in favor of a trial on the merits").

■ This is not a case where we can say without doubt that Livadiotakis' default was willful. On the contrary, the only evidence submitted supports a finding that it was not. According to Livadiotakis' direct testimony, he met with Osserman on June 23, 1995 at which time Osserman allegedly told him that he had received the Summons and Complaint and that he would be filing an answer on Livadiotakis' behalf. This testimony is supported by the testimony of Fotinos Panagakos, a friend of Livadiotakis' who attended the June 23, 1995 meeting. Osserman's di-

rect testimony, submitted by the Trustee, does not address whether Osserman would be, or represented that he would be, filing an answer for Livadiotakis. Thus, the only evidence submitted, when construed generously in favor of vacating the default, establishes that Livadiotakis believed a timely answer would be filed on his behalf. According to an affirmation by Livadiotakis filed on September 25, 1995 (hereinafter, the "September 25, 1995 Affirmation") in support of an application for an order, *inter alia,* vacating his default, Livadiotakis met with Osserman on July 14, 1995 and July 20, 1995. It is alleged that at the July 14, 1995 meeting, Osserman called the Trustee and left a message requesting an extension of time to file an answer. It is further alleged that at the July 20, 1995 meeting, Osserman "created the impression that he had answered the complaint ... or had an extension of time." September 25, 1995 Affirmation, p. 5, ¶ 24. It is also alleged that it was not until August 1995 that Livadiotakis learned that Osserman never filed an answer. Thereafter, Livadiotakis retained new counsel and subsequently, new counsel filed an answer and various other documents with this Court seeking, *inter alia,* to vacate the default or extend the time to answer. Thus, there is no basis for finding that the default had been willful.

■ In addition, there has been no evidence submitted nor allegations made which would serve as a basis for finding that the Trustee would be prejudiced by setting aside the default. *See Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983) (Court of Appeals reversed decision of District Court, that refused to vacate default, in part on the basis that "plaintiffs neither alleged or proved prejudice."). Clearly, setting aside the default would result in some delay to the Trustee, "[b]ut delay standing alone does not establish prejudice." *Enron,* 10 F.3d at 98. "Real prejudice is evidenced by the loss of evidence, the unavailability of witnesses or roadblocks to discovery." *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 993 (E.D.N.Y.1995). Here, there is no such claim.

■ Finally, in determining whether a meritorious defense has been presented, we

note that the standard is extremely low. *See, e.g., Meehan,* 652 F.2d at 277 ("The denials and defenses in the amended answer met the low threshold of adequacy for Rule 55 purposes."). Here, the denials and defenses in Livadiotakis' answer suffice. *Mathon,* 875 F.Supp. at 993 ("a meritorious defense is established by Rule 55 standards by setting forth denials and defenses in an answer."). Specifically, Livadiotakis' answer denies the following allegations contained in the complaint (the allegations are set forth in pertinent part as they appear at pp. 5–6 of the complaint, ¶¶ 20–23):

20. The Property meets the requirements of section 363(h) of the Code for approval of the sale of the jointly held Property.

21. The partition of the Property is impractical....

22. The sale of the Debtor's interest alone would yield significantly less than a sale of the entire Property....

23. The benefit to the estate resulting from the undivided sale of the Property outweighs any detriment to the Non-debtor co-owner....

Accordingly, we find that "good cause" exists to vacate Livadiotakis' default.

 As an additional basis for vacating Livadiotakis' default, we note that as a result of insufficient notice the Proposed Order granting judgment by default had not been signed and the Trustee never resubmitted a properly noticed one. Therefore, in accordance with Rule 29, as amended June 7, 1989, of the Local Rules Of The United States Bankruptcy Court for the Eastern District of New York and Rule 9 of this Court's Chambers Rules of Procedure, we deem the application for judgment by default abandoned.[7] Since the application is deemed abandoned, further cause exists to vacate the default.

Having vacated Livadiotakis' default, we need not address that part of his motion which seeks to extend his time to answer up to and including September 13, 1995. Since we have vacated his default, we deem his answer to have been timely.

## II. MOTION FOR SUMMARY JUDGMENT

Having vacated Livadiotakis' default, we now consider the Trustee's motion for summary judgment.

 Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7056, governs motions for summary judgment in the federal courts. The purpose of the motion is to dispose of issues which can be decided upon established, admitted or ascertainable facts without a trial. The court must deny summary judgment where there is a genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On the other hand, summary judgment is "appropriate ... if the Court determines that 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" *In re Chateaugay Corp.,* 150 B.R. 529 (Bankr.S.D.N.Y.1993) (*quoting, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The party seeking summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

 Section 363(h) of the Code provides, in pertinent part, that:

the trustee may sell both the estate's interest, ... and the interest of any co-owner in

---

7. Local Rule 29 provides "[u]nless otherwise directed by the court, orders directed to be settled or submitted, shall be settled or submitted ... within 10 days of the court's direction." If the order is not timely submitted or settled, unless otherwise ordered by the court, the proceedings shall be deemed abandoned. Similarly, Chambers Rule of Procedure 9 provides that "[a] direction to submit or settle a judgment or order shall be complied with within ten days of the direction except as specifically authorized by the court, or the matter will be deemed abandoned. Any papers returned by the court for any reason shall be resettled or resubmitted within ten days of their return." Here, it is approximately eight months since the September 13, 1995 hearing and we still do not have a properly settled order presented for settlement by the Trustee.

property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common . . . only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; . . . .

The trustee tells us that "[t]he Property is a commercial warehouse constructed and intended to be used as a single, undivided space and cannot be divided evenly. The Property cannot feasibly be separated into two halves because the entrances and exits are not spaced evenly throughout the building." Trustee's Affidavit In Support Of Motion For Summary Judgment (hereinafter, "Trustee's Affidavit") p. 4, ¶ 14(a).

Further, the Trustee tells us that "[t]he existing electrical and heating systems in the building would require major alterations to accommodate two separate buildings. The existing electrical service would have to be removed and altered and a new electrical service would have to be installed in order to make both halves of the Property self-sufficient." Id. at ¶ 14(b). The Trustee also asserts that a new heating system would have to be installed upon partition and "[a]s Trustee, I lack the financial resources to undertake substantial alterations of the Property." Id. at ¶¶ 14(b)–(c).

In support of his motion, the Trustee also submits the Affidavit of Russell Silver (hereinafter, "Silver's Affidavit") of G.E.M. Auction Corp. which is a full service marketing, brokerage, auction and appraisal firm retained by order of this Court dated February 7, 1994 to broker the assets of the Debtors. Silver, a Licensed Real Estate Broker, tells us that dividing the Property would be difficult and costly. He asserts that "[a] significant problem is that the building is currently on the tax map for New York City as lot 29 block 5728. In order to have two separate and distinct owners the tax lot would need to be separated. Silver's Affidavit, p. 1, ¶ 6. Silver further tells us that dividing the Property would be impracticable because it would result in major renovations being needed to the electrical system, air conditioning and heating systems.

On September 8, 1995, Livadiotakis' Affirmation in opposition to the Trustee's motion for summary judgment was filed with the Clerk of this Court.[8] Livadiotakis tells us that "[t]he Property can be partitioned and should be partitioned. In this regard, I respectfully direct this Honorable Court's attention to the affidavit of George Roussopoulos[9] . . . ." Livadiotakis further tells us that "I am also familiar with [the] Property and a tradesman. The Property can be easily partitioned. Further, I can and will assist with the partitioning . . . ." Livadiotakis further maintains that new air conditioning and heating systems and electrical systems would not have to be installed and that "[t]he Property is in essence two sepa-

8. The Trustee asserts that Livadiotakis' Affirmation is untimely and should be disregarded by this Court as it was filed after the August 2, 1995 original return date of the Trustee's motion. However, because the affirmation was filed prior to the adjourned return date of the Trustee's motion and because Livadiotakis did deny the allegation that the partition of the Property is impracticable in his answer, we will entertain Livadiotakis' Affirmation. A party filing late papers faces the consequence of this Court disregarding them. However, given the facts of this case and the reasons set forth above and the fact that we are mindful that this is a motion for summary judgment under 11 U.S.C. § 363(h) that could affect the rights of a non-debtor, we believe it would be wrong to disregard Livadio-

takis' Affirmation on the basis that it is untimely when it appears to this Court that no party will suffer prejudice by this Court entertaining the affirmation.

9. George Roussopoulos submitted an Affidavit in opposition to the Trustee's motion on September 7, 1995. However, an insolvent Chapter 7 debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property. In re Willemain, 764 F.2d 1019, 1022 (4th Cir.1985). Whether the Debtors are insolvent is not a necessary issue before this Court. Should the Trustee re-file his motion in accordance with this decision, the Debtors may further address this issue.

rate equal parts with separate doors and windows."

We find that with respect to the "proof" submitted by the Trustee and the opposition submitted by Livadiotakis, both parties have failed to provide a sufficient basis for a determination of whether or not there is a material factual dispute and therefore, we must deny the Trustee's motion for summary judgment. The problem with both sets of papers is that while each side tells us much, neither shows us anything. Conclusory statements abound, although there is a notable absence of facts to substantiate any of them.

As set forth above, the Trustee submits his own affidavit in support of his motion and further submits Silver's Affidavit. In general, both affidavits merely contain conclusory allegations not supported by evidentiary facts. For example, the Trustee asserts that major alterations to the electrical and heating systems would be required if the Property were partitioned. We are not told what information the Trustee utilized to reach this conclusion, nor are we told the nature, extent, or cost of such alterations or the time that would be required to complete them. Similarly, the Trustee asserts that the "building cannot be evenly split" because the "entrances and exits are not spaced evenly throughout the building." Again, we are not provided with meaningful information to support such allegations. Moreover, while Silver may be a Licensed Real Estate Broker, there is nothing in his affidavit to indicate his expertise with respect to the construction aspects of a partition of the Property. Although Silver's Affidavit states that "G.E.M. ... is qualified to represent this estate as brokers ..." and that "G.E.M. ... has dealt with the type of property involved herein", the affidavit does not provide information concerning Silver's qualifications regarding construction, architecture, heating systems, electrical systems, etc. Similar to the Trustee's affidavit, Silver's Affidavit is replete with mere unsupported conclusions that do not warrant granting summary judgment.

The same problems exist with Livadiotakis' Affirmation. Livadiotakis does not provide information qualifying him as an expert to support his conclusions. In fact, absent the problems we have with the Trustee's affidavit and Silver's Affidavit, Livadiotakis' Affirmation by itself would be insufficient to defeat the motion for summary judgment.

In sum, based on the problems with the Trustee's supporting documents, we must deny his motion. We do however, grant leave to re-file. Should the Trustee choose to do so, we admonish both parties to provide support for any conclusions that they want the court to adopt. A motion for summary judgment does not substitute a trial by affidavit for a trial by live testimony. It is merely a procedure to determine whether there is a need for a trial by live testimony. In order to succeed, the movant must provide a competent and undisputable showing. From what we have been provided with, we cannot determine the extent to which a material, factual dispute may exist.

Livadiotakis is directed to settle an order in conformity with this decision on two weeks notice to the Trustee.