**In re CENTURY ELECTRONICS MANUFACTURING, INC., et al., Debtors.**

**Nos. 01–40153–JBR to 01–40156–JBR.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 15, 2002.

George W. Tetler, III, Bowditch & Dewey, Worcester, MA, for Debtor.

David M. Nickless, Nickless & Phillips, Fitchburg, MA, trustee.

John J. Monaghan, Holland & Knight, Boston, MA, for Creditor Committee.

**MEMORANDUM DECISION ON APPLICATION OF UNITED CAPITAL, A DIVISION OF HUDSON UNITED BANK, FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM [# 548]**

JOEL B. ROSENTHAL, Bankruptcy Judge.

This matter came before the Court on the Application of United Capital, a Division of Hudson United Bank, for Allowance and Payment of Administrative Expense Claim [# 548] (the "Application") and the Chapter 11 Trustee's Opposition [# 551] (the "Opposition"). For the reasons set forth herein, the Application is **DENIED IN PART.** An evidentiary hearing on the issues of (i) the amount of the lease payments due for the period January

9, 2001 to March 8, 2001 and (ii) whether the Trustee returned all of United Capital's equipment and, if not, the amount of United Capital's damages and the Trustee's responsibility therefore will be scheduled.

## FACTS

The debtors filed voluntary petitions on January 9, 2001 (the "Petition Date"). Subsequently an order allowing joint administration entered. TAL Financial Corporation ("TAL") was a presumed equipment lessor of Century Electronics Manufacturing (NE) Inc. ("Century"), one of the debtors, pursuant to a Master Lease, Lease No. 081899–1, dated August 18, 1999. The Master Lease includes two lease schedules, referred to as Schedule 1, executed on or about August 18, 1999 (the "Schedule 1 Lease"), and Schedule 2 (the "Schedule 2 Lease"), executed on December 14, 1999, respectively, that set forth the equipment leased by Century. The monthly lease payments for the Schedule 1 and Schedule 2 Leases are $12,146.00 and $10,295.55, respectively. TAL apparently filed UCC–1's, at least with respect to the Schedule 1 Lease. The Court has not been given any documents to indicate whether financing statements were also filed with respect to the Schedule 2 Lease.

According to various pleadings filed by United Capital, including the Adequate Protection Motion, TAL subsequently assigned all of its interest in the Schedules 1 and 2 Leases to Lyon Credit Corporation ("Lyon") which, in turn, assigned them to United Capital, a division of Hudson United Bank ("United Capital"). The documents attached to United Capital's Motion to Compel Compliance with 11 U.S.C.

§ 365(d)(10) and Demand for Adequate Protection Pursuant to 11 U.S.C. § 363(e) (the "Adequate Protection Motion"), filed in March 2001, however, indicate otherwise.[1]

By Notice and Acknowledgment of Assignment dated August 18, 1999 ("First Notice of Assignment"), TAL obtained Century's consent to the assignment of "Lease # 081899, dated August 18, 1999, Schedule # 01" to Lyon. Lyon's address is listed as Soundview Plaza, 1266 East Main Street, Stamford CT 06902. The contact person for Lyon is listed as Ms. Sue McElroy. The copy of the First Notice of Assignment provided to the Court was signed by TAL and Century but not Lyon. Although United Capital alleges that it is the successor in interest to Lyon with respect to the Schedule 1 Lease, no documentation of this assignment has been provided.

By Notice and Acknowledgment of Assignment dated December 13, 1999 ("Second Notice of Assignment"), TAL obtained Century's consent to the assignment of "Lease # 081899–1, dated August 18, 1999, Schedule # 02" to United Capital. United Capital's address is the same as Lyon's address. In fact both United Capital and Lyon designated the same individual, Ms. Sue McElroy, as the contact person. The Second Notice of Assignment was signed by TAL, Century, and United Capital.

A further examination of documents submitted by United Capital highlight some additional areas of confusion. For example, in a financing statement filed on or around February 2002, the entity to whom Lyon assigned its interest in the Schedule 1 Lease is referred to as "Hudson United Bank", an entity which also has the same address as Lyon and United

---

**1.** Some of the documents attached to the Adequate Protection Motion are incomplete copies.

14

Capital. When Century filed its Schedule G, the schedule of executory contracts and unexpired leases, it listed Lyon but not United Capital or TAL as a lessor. Tal, however, was listed as a secured creditor on Schedule D for, among other leases, the Schedule 1 lease. Neither United Capital nor Hudson United Bank appear on Century's schedules.

On or about March 27, 2001 counsel for United Capital filed a Notice of Appearance and Request for Pleadings. The Notice states as follows:

> PLEASE TAKE NOTICE that Daniel J. Artz and Frank L. Schuble and the law firm of MacDonald & Schuble, L.L.P. represent UNITED CAPITAL, A DIVISION OF HUDSON UNITED BANK ("United Capital"), *a secured creditor* and party in interest herein, and that the undersigned hereby files this Notice of Appearance and Request for Notices pursuant to Bankruptcy Rules 2002 and 9007 as the counsel for United Capital, and hereby requests that *all notices given or required to be given in this case* and cases consolidated herewith, and all papers served or required to be served in this case, and any cases consolidated herewith, be given and served upon the attorneys for United Capital as follows:
>
> Daniel J. Artz, Esq.
>
> Frank L. Schuble, Esq.
>
> MacDonald & Schuble, L.L.P.
>
> 1700 Pacific Avenue, Suite 1650
>
> Dallas, Texas 75201
>
> Phone: (214) 969–9016
>
> FAX: (214) 922–0116
>
> *This request encompasses all notices, copies and pleadings referred to in Chapter 11 of Title 11, United States Code, or in Bankruptcy Rules 2002 or 9007, including without limitation, notices of any Orders, Motions, Demands. Complaints, Petitions or Requests, Applications, and other documents brought before this Court in this case, whether formal or informal, written or oral, or transmitted or conveyed by mail, delivery, telephone, telegraph, telex or other which affects or seeks to affect the above case.* (Emphasis added).

At the same time United Capital, through its counsel, filed the Adequate Protection Motion in which United Capital asserted that it was a lessor or, alternatively, a secured party, with respect to both the Schedule 1 and Schedule 2 Leases. On April 27, 2001 the debtors and United Capital reached a resolution memorialized in a pleading styled "Stipulation and Agreement" (the "Settlement Agreement") which United Capital's attorneys executed on their client's behalf. The Settlement Agreement, subsequently approved by the Court, provided that the debtors would make "monthly adequate protection payments equal in amount to the monthly payments due under the equipment leases" and that the payments would continue "until further order of the Court." The Settlement Agreement expressly stated that it was not to be deemed a waiver of the legal characterization of the leases as either "true" leases or secured transactions.[2] On May 3, 2001, after United Capital and the debtors reached their settlement of the Adequate Protection Motion, TAL filed a proof of claim asserting a secured claim against Century in connection with the Schedule 2 Lease.[3] The references in the proof of claim to the account number as "081899–1, Sch. # 02";

---

2. The Trustee has not asserted that the leases are not true leases.

3. TAL also alleged money owed in connection with a lease identified as "Sch. # 6." This does not appear to be the Schedule 1 Lease.

the date the debt was incurred as "12/14/99"; and the amount of the claim at the time of filing as "$10,295.55 (Sch.# 2)" leave no doubt that TAL was claiming an interest in the Schedule 2 Lease.

On September 14, 2001 the Court authorized the appointment of a Chapter 11 trustee and on September 21, 2001 approved the appointment of David Nickless as the Chapter 11 trustee (the "Trustee"). On September 28, 2001 the Trustee filed and served on United Capital's attorneys, among others, an Emergency Motion for Order Approving Bidding Procedures and Break-up Fee With Respect to Sale of Substantially All of the Debtor's Assets, which the Court approved in modified form, along with a Motion to Shorten the Time for Objection to the Motion for Order Authorizing and Approving Private Sale of Assets Free and Clear of Liens and Encumbrances and For Assumption and Assignment of Certain Leases. On October 5, 2001 the Trustee filed the Motion For Order Authorizing and Approving Private Sale of Property of the Estate Free and Clear of Liens and Encumbrances and Assumption and Assignment of Certain Leases Re: 274 Cedar Hill Rd., Marlborough, MA and 3240 Scott Boulevard, Santa Clara, CA. whereby he sought to sell substantially all of the assets of the debtors and assume and assign the two referenced leases. By order dated October 11, 2001 the Court approved the sale.

On October 28, 2001 the Trustee filed a Motion to Reject Unexpired Leases of Personal Property (the "Motion to Reject"). The leases with United Capital's predecessors in interest, TAL Financial and Lyon Credit, were specifically listed in the Motion to Reject. A copy of the Motion to Reject were mailed to United Capital's attorneys at the address set forth in the Notice of Appearance and to TAL and Lyon at their respective addresses. A copy was not sent to United Capital or Hudson United Bank. Lyon, Hudson United Bank, and United Capital share the same premises, however.[4] The Court approved the Motion to Reject effective October 31, 2001. The Motion to Reject did not provide for or contain a request that the Court set a date by which any claims arising from the lease rejection or any administrative claims incurred in connection with the rejected claims be filed.

Prior to the filing of the Motion to Reject, United Capital's attorneys allegedly moved from the address listed in the Notice of Appearance; its attorneys, however, had not filed anything indicating a change of address. The May 24, 2002 Application was the first pleading to reflect counsel's new address. United Capital's attorneys never filed any amended notice of appearance or a change of address. Instead the May 24, 2002 Application simply listed an address different from the one to which counsel asked that all pleadings be directed.

Subsequently the Creditors' Committee moved for the establishment of an administrative claims bar date; the Court set May 24, 2002 as the last day for filing administrative claims.[5] The Certificate of Service of the Bar Date Notice reflects that it too

---

4. As noted above, various attachments to the Adequate Protection Motion confirm that these parties have the same address; Exhibits F and I list the same individual, Sue McElroy, as the contact person for Lyon and United Capital. Hudson United Bank's address, as noted on the financing statement reflecting the assignment from Lyon, is also the same.

5. The Court takes judicial notice of the Certificate of Service reflects that the administrative bar date order was served by counsel to the Creditors' Committee on only TAL and Lyon. United Capital, however, filed a timely claim.

was served on TAL and Lyon but not United Capital. Nevertheless, on May 24, 2002, the last day to file administrative claims, United Capital filed its Application seeking administrative expenses pursuant to 11 U.S.C. § 503(b)(1) in the amount of $157,090.85 covering two different time periods: (i) from the Petition Date through March 8, 2001, and (ii) from November 1, 2001 until June 2002 when the leased equipment was actually returned to United Capital.[6]

The Trustee seeks to bar the administrative claim on the grounds that it is untimely and that the estate's liability was terminated when the leases were rejected effective October 31, 2001. The Trustee also asserts that the debtors paid United Capital any payments due in connection with the debtors' use of the leased equipment during the first 59 days of the case.

United Capital contends that was not properly served with the Motion to Reject and therefore the Schedule 1 and Schedule 2 Leases are still in effect. Consequently it seeks payment of the lease amounts for the period of November 1, 2001 through the date of the actual return of the equipment. Moreover, it asserts that it did not receive any lease payments for the period from the Petition Date through March 8, 2001, the first 59 days of the case.

## DISCUSSION

The Trustee asserts that United Capital's entire claim is barred by the doctrine of laches. The Trustee, however, failed to obtain a date by which claims arising from any of the debtors' leases needed to be asserted. Instead the Creditors' Committee obtained an administrative bar date of May 24, 2002. United Capital's claim was filed on that day and therefore was timely.

### The January 9, 2001 to March 8, 2001 Lease Payments

Although the Bankruptcy Code permits a Chapter 11 debtor to defer its obligations under personal property leases of the type at issue herein, 11 U.S.C. § 365(d)(10),[7] it does not exempt a debtor from its obligation to pay. The Trustee assets that the payments were made; United Capital asserts that they were not. The Court cannot resolve this factual dispute without an evidentiary hearing. Consequently one will be scheduled.

### The November 1, 2001 to June 2002 Lease Payments

Despite United Capital's allegation to the contrary, there is no real question that the leases at issue herein were the subject of the Motion to Reject. Although the Motion to Reject does not reference United Capital, it refers to the leases set forth on the Debtors' Schedules G listing leases as of the Petition Date as well as the "lease" with TAL which Century had scheduled as a financing arrangement on its Schedule D. The only question is whether the Motion was properly served. Although the Trustee failed to effectuate service in a manner that would have clearly and definitively removed any doubt as to the propriety of service, the facts herein support a conclusion that service was proper.

Fed. R. Bankr.P. 6006 governs proceedings to assume, reject, or assign executory contracts and unexpired leases and expressly provides in part:

---

6. There is a dispute as to whether all of the equipment was returned. United Capital asserts that there are three items missing.

7. The Court's statement should not be viewed by the parties as a ruling that the amount a debtor is obligated to pay for the first 59 days of its Chapter 11 case is always the same as the lease payments.

(a) Proceeding to Assume, Reject, or Assign. A proceeding to assume, reject, or assign an executory contract or unexpired lease, other than as part of a plan, is governed by Rule 9014.

Fed. R. Bankr.P. 9014, in turn, provides in pertinent part:

In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion.... The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004....

The relevant provisions of Fed. R. Bankr.P. 7004 state:

(a) Summons; service; proof of service. Rule 4(a), (b), (c)(1), (d)(1), (e)-(j), ($l$), and (m) F.R.Civ.P. applies in adversary proceedings. Personal service pursuant to Rule 4(e)-(j) F.R.Civ.P. may be made by any person at least 18 years of age who is not a party, and the summons may be delivered by the clerk to any such person.

(b) Service by first class mail. Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

\*　　\*　　\*　　\*　　\*　　\*

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Fed.R.Civ.P. 4(h), which provides "additional methods of service" upon a corporation referenced in Bankruptcy Rule 7004 provides:

(h) Service Upon Corporations and Associations. Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:

(1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant....

Because a corporation doing business within the United states may be served in the same manner as service upon an individual, the manner in which individuals may be served is relevant. Fed.R.Civ.P. 4(e) provides:

(e) Service Upon Individuals Within a Judicial District of the United States. Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Finally, because Fed.R.Civ.P. 4(e) permits service on an individual to be effectuated as provided for under the relevant state law, Mass. R. Civ. P. 4 applies as well. That rule provides:

(d) Summons: Personal Service Within the Commonwealth. The summons and a copy of the complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(1) Upon an individual by delivering a copy of the summons and of the complaint to him personally; or by leaving copies thereof at his last and usual place of abode; or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by statute to receive service of process, provided that any further notice required by such statute be given. If the person authorized to serve process makes return that after diligent search he can find neither the defendant, nor defendant's last and usual abode, nor any agent upon whom service may be made in compliance with this subsection, the court may on application of the plaintiff issue an order of notice in the manner and form prescribed by law.

■ There is no dispute that no officer of United Capital was served. Indeed the Motion to Reject was not even sent to United Capital. A copy of the Motion was sent to Lyon. Yet the Motion to Reject was not directed to any officer, or even to any individual at Lyon and thus serve upon Lyon cannot be construed to convey personal jurisdiction over United Capital, even if the Court found a sufficient enough affiliation between Lyon and United Capital.[8] Cf. Plushner v. Mills, 429 A.2d 444, 446 (R.I.1981) (actual notice coupled with service by delivery to defendant's daughter while she was at defendant's residence was sufficient even though daughter maintained her own, separate residence because she was a "trusted member of defendant's household and that a substantial nexus existed between her and the defendant"). Actual knowledge, which the Court assumes that United Capital had, especially in light of the fact that simply mailing notice of the administrative bar date to Lyon lead to United Capital's timely filing of its claim, is not a substitute for proper service. Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 24 (1st Cir.1992). Moreover, United Capital had not expressly authorized its attorneys to accept service of process. Thus none of these facts can support a finding that service was proper. The circumstances of this case, however, demonstrate that United Capital's attorneys are United Capital's implied agent for service of process and for that reason, service was proper.

■ "An agent's authority to accept process on the corporation's behalf may be implicit or explicit." Reisman v. First

8. Although some courts have held that service of an office, rather than an officer, is substantial compliance and therefore proper service, the Court is not aware of any cases under Fed.R.Civ.P. 7004 in which a court has found service on the corporation only proper service. See Schwab v. Associates Commercial Corporation (In re C.V.H. Transport, Inc.), 254 B.R. 331, 333 and n. 1 (Bankr.M.D.Pa 2000) and cases cited therein.

*New York Bank For Business (In re Reisman)*, 139 B.R. 797, 800 (Bankr.S.D.N.Y. 1992). "To find an implied agency, courts look at all the circumstances under which the defendant appointed the attorney to measure the extent of the authority that the client intended to confer. If the purported agent's activities are substantial and involve the significant exercise of independent judgment and discretion, service on the agent is valid even in the absence of express authorization to accept process." *Ms. Interpret v. Rawe Druck-and–Veredlungs–GmbH (In re Ms. Interpret)*, 222 B.R. 409, 416 (S.D.N.Y.1998) (citations omitted). "When a defendant takes an active role in a chapter 11 case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendants." *Reisman*, 139 B.R. at 801 (citation omitted). In the instant case, the Notice of Appearance contains very broad language, including a request that counsel be served with all "pleadings" and "complaints." Therefore it is not inconsistent with finding implicit authority, and indeed, supports the notion that the attorneys expected to act as a filter for all pleadings and complaints and bring them, as appropriate, to United Capital's attention. *Id.* But for counsel's change of address, of which it failed to give timely notice, the Court expects that United Capital would have received such notification through its counsel. The Notice of Appearance, however, without more is not sufficient to find service of process was proper. *Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 40 (Bankr.E.D.N.Y.1996). The agent must have taken an active role in the case and appear in a proceeding integrally related to the case. United Capital's attorneys were active in a major area, namely seeking enforcement of rights under executory contracts. This is the very area which was the subject of the Motion to Reject. Moreover, United Capital's counsel, not United Capital, executed the Settlement Agreement. United Capital never raised any objection to its attorneys executing the settlement of its rights and in fact, fully availed itself of the relief provided in the Settlement Agreement. To allow its attorneys such authority at one stage of the proceeding is inconsistent with United Capital's current attempt to limit the role of its counsel.

## CONCLUSION

For the reasons set forth herein, the Application is denied. A separate order will issue.