**OLYMPUS CORPORATION, Plaintiff,**

v.

**DEALER SALES & SERVICE, INC., Copy Care, Inc., Richard L. Hoffman and Phillip W. Sharp, Defendants.**

**No. 85 Civ. 0899.**

United States District Court, E.D. New York.

Aug. 21, 1985.

Hayt, Hayt & Landau, Great Neck, N.Y., for plaintiff.

Walsh, Maroney & Ponzini, Tarrytown, N.Y., for Copy Care, Inc. and Philip W. Sharp.

Wolf, Poper, Ross, Wolf & Jones, New York City, for Dealer Sales & Service, Inc. and Richard L. Hoffman.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action seeking monetary damages for alleged breaches of a distributorship agreement by defendant Dealer Sales & Service, Inc. On April 25, 1985, I issued a preliminary injunction in this action enjoining defendant [1] from taking any action in a case entitled *Dealer Sales & Service v. Olympus Corporation,* Civil Action No. C85–2214A (N.D.Ga., Atlanta Div.), which is pending in the United States District Court for the Northern District of Georgia. At that time, I indicated that a short memorandum opinion would be issued setting forth the bases for the preliminary injunction. Research for that opinion has led me to the conclusion that defendant was never properly served with process in this action. The preliminary injunction must, therefore, be terminated.

*Facts*

I will briefly summarize the background of this case and the facts relevant to the service of process issue. In January 1984, plaintiff, Olympus Corporation, and defendant entered into a written agreement under which defendant was to act as a distributor for the warehousing and resale to retailers of various copy machines and related products manufactured by plaintiff. That agreement included the following forum selection and consent to jurisdiction clause:

> It is hereby irrevocably agreed that all actions, suits or proceedings between OC [plaintiff] and DISTRIBUTOR [defendant] arising out of, in connection with or relating to this Agreement, or the interpretation, performance or breach thereof, shall be litigated in the Supreme Court of the State of New York in the County of Nassau or in the United States District Court for the Eastern District,

---

**1.** There are four parties named as defendants in this action: Dealer Sales & Service, Inc., Copy Care, Inc., Richard L. Hoffman and Philip W. Sharp. For purposes of convenience, all references to "defendant" in this opinion pertain only to defendant Dealer Sales & Service, Inc.

State of New York. DISTRIBUTOR hereby consents to the jurisdiction of said Supreme Court and United States District Court in the State of New York. Notwithstanding the foregoing, OC shall be entitled, at its option, to institute suit in any court of competent jurisdiction to recover any Products or amounts due OC from the DISTRIBUTOR.

Plaintiff maintains that by November 1984, defendant owed plaintiff approximately $186,000 under the distributorship agreement. At that time, Douglas Zullo, plaintiff's Director of Administration, Special Products Division, met with Richard L. Hoffman, President of defendant, to discuss the debt. During the following three months, the parties exchanged several letters and phone calls concerning defendant's payment obligations and plaintiff's intent to terminate the distributorship agreement. In at least one letter, dated December 19, 1984, Hoffman also expressed concern "about the treatment we have received from Olympus," and claimed that they were "experiencing extreme difficulty" in collecting their accounts because some of their dealers were unable to obtain needed copy machine accessories. In a letter to Hoffman dated January 3, 1985, Zullo threatened to turn the matter over to plaintiff's legal department. Defendant responded by a letter dated January 16, 1985, which asked Zullo to refrain from referring the matter to the legal department.

On or about February 25, 1985, defendant filed a complaint in the Superior Court of DeKalb County, State of Georgia. The complaint, captioned *Dealer Sales & Service Inc. v. Olympus Corporation*, asserted various claims for breach of a contract to sell copy machines, price discrimination in violation of 15 U.S.C. § 13 et seq., and fraud in the inducement of the contract for copy machines. The action was subsequently removed to the United States District Court for the Northern District of Georgia.

Plaintiff filed the complaint in the present action on March 8, 1985. On April 17, 1985, plaintiff's counsel appeared before the Court to apply for a temporary restraining order and preliminary injunction enforcing the forum selection clause in the distributorship agreement by enjoining defendant from taking any action in the Georgia lawsuit. In conjunction with its application, plaintiff submitted an affidavit of service which stated:

This court has personal jurisdiction over defendant Distributor, whose attorney, Mr. Fuller, informed me that he would recommend that defendant Distributor authorize him to accept service of the summons, complaint, amended summons and amended complaint on behalf of defendant Distributor; on April 15, 1985, I caused such documents to be sent to Mr. Fuller by Federal Express. On the same day, I served a copy of the amended summons and amended complaint upon defendant Distributor pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure, by mailing true copies of same to Dealer Sales & Service, Inc....

Pernick Aff. ¶ 4. I signed an order submitted by plaintiff which granted the temporary restraining order and directed defendant to show cause on April 25, 1985 why a preliminary injunction should not be entered. The order also provided:

Service upon defendant Distributor of this order, the attached affidavit of Douglas A. Zullo and the accompanying memorandum of law shall be sufficient if copies thereof (together with the amended summons and amended complaint) are delivered to any express delivery service or by express mail on or before April 19th, 1985 for delivery to such defendant's attorneys in the above action sought to be stayed, Lawson, Fuller & Hancock, One West Court Square, Suite 590, Decatur, Georgia 30030.

At the April 25th hearing, defendant appeared by its attorneys in the Georgia action, the law firm of Lawson, Fuller & Hancock, of Decatur, Georgia. John W. Lawson and Stephen P. Fuller of that firm were admitted *pro hac vice* to represent defendant at the hearing. During the course of the proceedings, Mr. Lawson

stated that on the previous day, defendant had received a copy of the complaint in the mail. Transcript of the April 35, 1985 hearing ("Tr."), at 19–20. In conjunction with the hearing, defendants submitted an affidavit by Richard Hoffman, which stated:

> Because of the considerable time the law firm of Lawson, Fuller and Hancock has put into reviewing and evaluating the transactions between Dealer Sales & Service, Inc. and Olympus Corporation, it is economically essential that Lawson, Fuller and Hancock represent Dealer Sales & Service, Inc. in any dispute involving Olympus Corporation in the State of New York.

Hoffman Aff. ¶ 9.

*Discussion*

In an affidavit of service, plaintiff's attorney contended that service of process on defendants was effected, pursuant to Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure, by mailing copies of the amended summons and complaint to defendant Hoffman, President of defendant Dealer Sales. At the hearing on the preliminary injunction, plaintiff further contended that defendant was effectively served, pursuant to Rules 4(c)(2)(B)(iii) and 4(e), when plaintiff caused copies of the amended summons and complaint to be sent by Federal Express to defendant's Georgia attorneys, in accordance with the April 17, 1985 Order to Show Cause. Tr. at 8–9. In their papers, defendants generally objected to the validity of service upon their Georgia attorneys. At the hearing, defendant also specifically contested the validity of mail service. Defendant argued that such service is effective only upon return of the "acknowledgment of service" required by Rule 4(c)(2)(C)(ii), but indicated that mail service would be valid if defendant acknowledged receipt of service. Tr. 19–20.

The preliminary injunction was initially issued upon the assumption that defendant had been effectively served under either of two alternative theories. The primary theory was that service is valid under Rule 4(c)(2)(C)(ii) because defendant's attorney, in open court, confirmed that defendant had actually received the amended summons and complaint by mail. *See Morse v. Elmira Country Club*, 752 F.2d 35, 41 (2d Cir.1984). The alternative theory was that service on defendant's Georgia attorneys by Federal Express is effective because defendant had impliedly appointed the attorneys as its agents for service of process, or defendant should be estopped from denying such agency by the above-quoted statement in Mr. Hoffman's affidavit. However, careful research has revealed that we have strayed into some of the subtly hidden traps that await those who explore the intricacies of the law on service of process. I am, unfortunately, constrained to conclude that defendant has not been effectively served with process under any of the methods authorized by the applicable laws.

As indicated above, plaintiff assumed that, pursuant to Rule 4(c)(2)(C)(ii), mail service is authorized in areas outside of the territorial limits of the state where the district court sits. Defendant apparently joined in this assumption, but contested the effectiveness of federal rules mail service where the defendant did not return the acknowledgment form. A careful reading of Rule 4 reveals that this assumption is erroneous. Rule 4(f) provides that process may be served only within the territorial limits of the state where the district court is held, and beyond those limits "when authorized by a statute of the United States or by these rules . . . ." The only authority for extraterritorial service in the rules is Rule 4(e), which provides:

> Whenever a statute of the United States or an order of court thereunder provides for service of a summons . . . upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides . . . for service of a

summons ... upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.

When read together, Rules 4(e) and (f) require that extraterritorial service be made pursuant to either a federal statute, or a state statute or rule of court. *Davis v. Musler*, 713 F.2d 907, 914 (2d Cir.1983). Consequently, mail service under the federal rules is not valid where, as here, defendant is served outside of the forum state. *Daley v. Alia*, 105 F.R.D. 87, 89 (E.D.N.Y. 1985); *William B. May Co. v. Hyatt*, 98 F.R.D. 569, 570 (S.D.N.Y.1983).[2] As the form of mail service attempted by plaintiff is also not authorized by New York law, *see, id.;* N.Y. Civil Practice Law and Rules ("CPLR") § 308 (McKinney Supp.1984), the mail service on defendant is invalid.

■ Plaintiff's alternative theory, that the service on defendant's attorneys by Federal Express is valid, is premised on the contention that this Court was empowered under either Rule 4(e) or 4(c)(2)(B)(iii) to issue an order prescribing the manner of service. Rule 4(e) states that extraterritorial service may be made in the manner provided by "a statute of the United States or an order. of court thereunder...." There is no federal statute that authorizes extraterritorial service on defendant in a case such as this, where the plaintiff is seeking equitable relief and damages in a diversity action based on alleged breaches of a distributorship agreement. Under such circumstances, Rule 4(e) does not empower a court to issue an order fashioning a novel method of extraterritorial service. The word "thereunder" in Rule 4(e) "makes

it clear that the words 'order of the court' refer only to orders authorized by a specific federal statute and that a federal court does not have blanket authority to enter an order for substituted or personal service outside the state in which it is sitting." 4 C. Wright and A. Miller, *Federal Practice and Procedure* § 1117, at 482 (1969); 2 J. Moore and J. Lucas, *Moore's Federal Practice* ¶ 4.32[1], at 4–344 (1985); Fed.R.Civ.P. 4(e) advisory committee notes to the 1963 amendment.

Nor does Rule 4(c)(2)(B)(iii) provide any basis for a court order prescribing the manner of extraterritorial service. The Rule states that a United States marshal, deputy marshal or a "person specially appointed by the court for that purpose" may serve a summons and complaint

> pursuant to an order issued by the court stating that a United States marshal or deputy United States marshal, or a person specially appointed for that purpose, is required to serve the summons and complaint in order that service be properly effected in that particular action.

This Rule addresses only *who* may serve a summons and complaint. The Order to Show Cause in this case provided that service of the Order, together with the amended summons and complaint, was sufficient if "delivered to any express delivery service or by express mail" for delivery to defendants' attorneys. It did not specify who should complete the service. Such an order does not fall within the ambit of Rule 4(c)(2)(B)(iii). In any event, that Rule does not provide a basis for resolving the critical questions presented here: how and where

---

**2.** Further support for this conclusion may be drawn from legislative history of the amendments to the federal rules that provided for mail service. The original amendments submitted to Congress by the Supreme Court provided for adding a subdivision (d)(8) to Rule 4, which would have authorized service by certified or registered mail, and also provided for adding the following clause to the end of subdivision (e): "except that service by mail must be made pursuant to the procedures set forth in paragraph 8 of subdivision (d) of this rule." 96 F.R.D. 124. In response to criticism of the mechanics of service under the proposed new Rule 4(d)(8), Congress rejected the Supreme Court's proposal and passed the amendments which, upon signature by the President, became the current Rule 4(c)(2)(C)(ii). *See* 96 F.R.D. 118–19. Notably absent from the amendments as ultimately passed was any provision comparable to the above quoted amendment to subdivision (e). By declining to so amend subdivision (e), Congress implicitly left intact the requirement that extraterritorial service, including mail service, be made only as authorized by federal statutes or state law.

plaintiff can effectively serve the summons and complaint.

■ As noted above, extraterritorial service may be effected in a manner authorized by the law of the state where the district court is held. Fed.R.Civ.P. 4(e) and (f). While New York law does not expressly authorize service by an express delivery service such as Federal Express, it does authorize service "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." CPLR § 308(5); *see also* CPLR § 313.[3] Conceivably, service on defendant by Federal Express, pursuant to an order of the court, could have been authorized under § 308(5) if plaintiff had made the requisite showing of impracticability. Plaintiff did not make any such showing in either its moving papers or oral presentations to the Court. The service cannot, therefore, be sustained under § 308(5). *Langdon v. Mohr,* 67 A.D.2d 648, 412 N.Y.S.2d 600, 601 (1st Dept.1979); *53rd & 7th Corp. v. Rossi,* 85 Misc.2d 916, 381 N.Y.S.2d 372, 373 (N.Y. Civ.Ct., N.Y.Co.1975).

■ In any event, even if the order for service by express delivery service was proper, such service would be effective only if defendant had appointed its attorneys as agents for the receipt of process, or if defendant is estopped from denying such agency. *See Gerard v. Shriro Universal Corp.,* 91 A.D.2d 508, 456 N.Y.S.2d 373, 374 (1st Dept.1982); *53rd & 7th Corp.,* 85 Misc.2d 916, 381 N.Y.S.2d 372. The authority of an attorney to act as an agent for service of process need not be express and may be implied from surrounding circumstances indicating the intent of the principal (client). 4 Wright and Miller, *su-*

pra, § 1097, at 371–72 (1969); 2 *Moore's Federal Practice, supra,* ¶¶ 4.12, 4.13, at 4–128 to 131 and 4–140 (1985). While the usual principles of agency apply in evaluating an attorney's authority to receive process, 2 *Moore's Federal Practice, supra,* at 4–132; J. McLaughlin, *Practice Commentaries to CPLR § 303,* C303:1 1984 (McKinney Supp.1984), a review of the cases reveals that, at least in New York, the courts are reluctant to lightly imply such an agency.[4]

The critical inquiry in evaluating an attorney's authority to receive process is, of course, whether the client acted in a manner that expressly or impliedly indicated the grant of such authority. Plaintiff's attorney claims that before the amended summons and complaint were served by Federal Express, defendant's attorney, Stephen Fuller, stated in a telephone conversation that he "would recommend that defendant Distributor authorize him to accept service...." Pernick Aff. ¶ 4. Aside from the equivocal nature of Mr. Fuller's statement that he would "recommend" such authorization, an attorney's claim that he is authorized to receive process is not by itself sufficient; there must be some evidence that the client intended to grant such authority. *See Charles H. Greenthal & Co. v. 301 E. 21st St. Tenants' Ass'n,* 91 A.D.2d 934, 457 N.Y.S.2d 826 (1st Dept. 1983); 4 Wright and Miller, *supra,* § 1097, at 372.

■ In this case, there is no persuasive evidence of the defendant's intent to appoint its attorneys as agents for the service of process. The only evidence which possi-

---

3. Paragraph one of C.P.L.R. § 308 authorizes personal service. Paragraphs two and four of that section authorize the specific methods of substituted service.

4. In the majority of recent New York cases, the courts have declined to find that attorneys were impliedly appointed as agents for the service of process on their clients. *See, e.g., Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269 (S.D.N.Y.1984); *Al-Dohan v. Kouyoumjian,* 93 A.D.2d 714, 461 N.Y.S.2d 2 (1st Dept.1983); *Charles H.*

*Greenthal & Co. v. 301 East 21st St. Tenants' Ass'n,* 91 A.D.2d 934, 457 N.Y.S.2d 826 (1st Dept. 1983); *Gerard v. Shriro Universal Corp.,* 91 A.D.2d 508, 456 N.Y.S.2d 373 (1st Dept.1982); *Langdon v. Mohr,* 67 A.D.2d 648, 412 N.Y.S.2d 600 (1st Dept.1979). *But see United States v. Bosurgi,* 343 F.Supp. 815 (S.D.N.Y.1972); *53rd & 7th Corp. v. Rossi,* 85 Misc.2d 916, 381 N.Y.S.2d 372 (N.Y.Civ.Ct., N.Y.Co.1975) (both finding implied agency for the receipt of process).

bly bears on defendant's intent is Mr. Hoffman's statement in his affidavit,[5] after his attorneys were served, which is no less equivocal than the statement by his attorney, Stephen Fuller, before service was attempted. Though Hoffman stressed the importance of having defendant's Georgia attorneys represent defendant in this action, he did not clearly ratify the purported designation of those attorneys as defendant's agents for service. To the contrary, he stated that defendant had not yet received a copy of the summons and complaint, and defendant's attorneys vigorously contested the sufficiency of service. From the circumstances, I cannot find that defendant clearly intended to appoint its attorneys as agents for the service of process.

Nor can agency be implied from the mere fact that the attorneys represent defendant in a related action in another jurisdiction. *Gerard,* 91 A.D.2d 508, 456 N.Y.S.2d 373; 2 *Moore's Federal Practice, supra,* ¶ 4.13, at 4–142. The critical distinction is whether the attorney's activities on behalf of the client are "purely 'primary professional functions' insufficient to warrant a finding of implied authority to receive service of process,"[6] or whether the attorney performs services beyond the scope of the typical attorney-client relationship. *See 53rd & 7th Corp.,* 85 Misc.2d 916, 381 N.Y.S.2d 372 (defendant's attorney is an agent where defendant, an entertainer,

posted his name on the door to his attorney's office and there was "an indication" that the attorney acted as defendant's business agent). In the present case, defendant's Georgia attorneys represented defendant in the related action in Georgia, but there is no indication that the attorneys performed any activities for defendant other than the "primary professional functions" associated with prosecuting a lawsuit. I can find no basis for implying an agency for receipt of process from those activities.

For all of these reasons, I am compelled to conclude that, at the present time, this Court lacks personal jurisdiction over defendant Dealer Sales & Service, Inc. because defendant has not been properly served with process. Accordingly, the preliminary injunction issued on April 25, 1985 must be, and hereby is, terminated.

In dissolving the preliminary injunction, I am mindful of the very technical nature of the deficiencies in service, and the fact that defendant made the same erroneous assumption as plaintiff—that mail service under Rule 4(c)(2)(C)(ii) could be effective if properly completed. I also believe that if defendant is promptly and properly served, the injunction should be reinstated for the same reasons as stated on the record on April 25, 1985. Tr. 42–48. Accordingly, plaintiff is hereby granted leave to serve the amended summons and complaint on defendant and file proof of service within

---

5. See *supra,* at p. 303.

6. *Gibbs v. Hawaiian Eugenia Corp.,* 581 F.Supp. 1269, 1271 (S.D.N.Y.1984) (*citing Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 628 F.2d 652, 668 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981)). *Accord WICA, Inc. v. WWSW, Inc.,* 191 F.2d 502, 504 (D.C.Cir.1951). There is one case where a court did find that attorneys had implicit authority to receive process even though they were performing what might be characterized as primary professional functions, but that case is clearly distinguishable. *See United States v. Bosurgi,* 343 F.Supp. 815 (S.D.N.Y. 1972). In *Bosurgi,* the defendant had retained a law firm to assert the defendant's alleged right to possession of a certain fund that was already being held in escrow subject to tax liens of the

United States. The attorney filed a state court action to claim the fund. The United States then commenced a related action in federal district court and served process on the defendant's attorneys. The district court upheld the service, finding that "[l]itigation with the United States must have been intended as within the scope of the attorney's authority, since to obtain the fund for [their client], its attorneys would inevitably have to face and overcome the claim of the United States." 343 F.Supp. at 818. In the present case, defendants are not asserting rights in an identifiable fund. They commenced an action in Georgia based on alleged breach of contract and fraud by plaintiff OC, in response to which plaintiff's action for breach of contract may have been a strong probability, but it was not "inevitable."

ten (10) days of the date of this Order.[7] Within five (5) days after the date that such proof of service is filed with the Court, defendant shall show cause, in papers submitted to the Court, why a preliminary injunction should not be granted against defendant upon the same terms and conditions as the preliminary injunction issued in this matter on April 25, 1985.

---

7. Rule 4(j) of the Federal Rules of Civil Procedure provides that an action shall be dismissed if service of the summons and complaint is not made within 120 days after the filing of the complaint, unless the party on whose behalf such service is required shows good cause for failing to serve within that period. The 120 day period for service on defendant expired while this decision was *sub judice.* Accordingly, I find that plaintiff had good cause for the failure to serve defendants in a timely fashion. I therefore conclude that this action should not be dismissed under Rule 4(j) as against defendant Dealer Sales & Service, Inc.