SILVERMAN, Circuit Judge.
 

 We hold today that in an adversary proceeding in bankruptcy court, a lawyer can be deemed to be the client’s implied agent to receive service of process when the lawyer repeatedly represented that client in the underlying bankruptcy case, and where the totality of the circumstances demonstrates the intent of the client to convey such authority. We also hold that
 
 Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,
 
 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), does not bar the issuance of a preliminary injunction freezing assets where fraudulent conveyance or equitable causes of action are pleaded in the bankruptcy context.
 

 I. Facts
 

 On October 6, 2000, an involuntary bankruptcy case was filed against Focus Media, Inc., and John Pringle was appoint
 
 *1080
 
 ed trustee. On January 3, 2002, Pringle brought an adversary proceeding against Thomas Rubin, the sole shareholder of Focus Media. The complaint alleged that Focus Media transferred approximately $20 million to Rubin in 2000, and further that Focus Media granted millions of dollars in unpaid loans to Rubin in 1999 and 2000. Pringle alleged that Rubin had used these funds in part to pay his personal taxes.
 

 On the same day that the complaint was filed, Pringle also sought to freeze Rubin’s assets by filing an ex parte motion for a temporary retraining order (“TRO”), a motion for a preliminary injunction, and a request for a writ of attachment.
 

 The ex parte motion alleged Pringle’s belief that Rubin resided in France. Bankruptcy Judge Kathleen March granted Pringle’s motion and issued a TRO against Rubin, enjoining him from “spending, transferring, concealing, dissipating, encumbering, assigning, and/or hypothe-cating” $20 million in assets. The court additionally scheduled a hearing on Prin-gle’s request for a preliminary injunction and ordered Rubin served with the complaint, the summons, the ex parte motion, and the TRO.
 

 As ordered, Pringle filed with the bankruptcy court proofs of service of the required documents. These proofs of service reflect that service on Rubin was made “c/o Geoffrey C. Mousseau, 3435 Wil-shire Blvd., Ste. 2700, Los Angeles, CA 90010.” At the TRO hearing, Pringle’s attorney told the court that “the only address I have for [Rubin] at this time would be care of Mousseau and Associates.”
 

 On January 14, 2002, the court conducted a hearing on the preliminary injunction motion and Rubin’s emergency motion for a stay pending appeal. Rubin did not enter an appearance on the preliminary injunction motion; however, Yolanda Or-ozco, counsel for Rubin, was in attendance and argued the motion for stay on Rubin’s behalf. The court indicated at the start of the hearing that its “tentative [ruling] is to grant a preliminary injunction with the same terms as the TRO if, and only if, the adversary summons and complaint were properly served on Rubin.” The court specified that “the question here really comes down to whether Mousseau was ... impliedly designated as an agent for service of process for Mr. Rubin” under the bankruptcy rules.
 

 The bankruptcy court subsequently issued a preliminary injunction. The court found that Mousseau, as counsel for Rubin in the underlying bankruptcy case, was impliedly authorized to receive service of process on Rubin’s behalf in the adversary case. As a consequence, the bankruptcy court had personal jurisdiction over Rubin. The court issued the preliminary injunction based on a finding that Pringle was likely to prevail on his claims against Rubin for (1) fraudulent conveyance under 11 U.S.C. § 548 (count one of the complaint), (2) fraudulent conveyance under 11 U.S.C. § 544(b) (count two), and (3) turnover of property to the estate under 11 U.S.C. § 542 (count seven), and further that the bankruptcy estate would otherwise be irreparably injured.
 

 Rubin appealed the preliminary injunction to the district court, which affirmed the bankruptcy court. The district court found that service on Mousseau was proper under Federal Rule of Bankruptcy Procedure 7004(b), noting that
 

 [t]here appears to be no precedent that bound the Bankruptcy Court or binds this Court in determining whether an attorney has implied authority to accept service of process as a client’s agent under Fed. R. Bankr.P. 7004(b)(8) when the attorney has made appearances in court on the client’s behalf.
 

 
 *1081
 
 However, the court “adopt[ed] the advisory precedent applied by the Bankruptcy Court,” ruling that implied authority to accept service of process was proper under the bankruptcy rules. The district court summarized five instances of Mousseau’s representation of Rubin and involvement in the bankruptcy case, concluding: “The circumstances of appellant Rubin’s involvement in the involuntary petition hearings, where appellant was represented by Mous-seau, indicate that Mousseau did have implied authority to accept service of process in the subsequent adversary proceeding.” Having satisfied itself that it had jurisdiction, the district court affirmed the bankruptcy court’s issuance of a preliminary injunction. The district court found
 
 Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,
 
 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), which held that asset-freezing injunctions are impermissible where a creditor seeking money damages lacks any interest in the debtor’s assets, inapplicable.
 

 II. Jurisdiction and Standard of Review
 

 We have jurisdiction pursuant to 28 U.S.C. § 158(d). We review de novo the district court’s decision on appeal from a bankruptcy court.
 
 Saxman v. Educational Credit Mgmt. Corp. (In re Saxman),
 
 325 F.3d 1168, 1172 (9th Cir.2003). The bankruptcy court’s decision is reviewed independently and no deference is given to the district court’s determinations.
 
 Id.
 
 A bankruptcy court’s conclusions of law are reviewed de novo and its factual findings are reviewed for clear error.
 
 Hanf v. Summers (In re Summers),
 
 332 F.3d 1240, 1242 (9th Cir.2003). We review de novo the determination that service of process was sufficient.
 
 Marshall v. Warwick,
 
 155 F.3d 1027, 1030 (8th Cir.1998). “Our review of the decision to grant a preliminary injunction is limited and deferential.”
 
 Harris v. Bd. of Supervisors,
 
 366 F.3d 754, 766 (9th Cir.2004). We review de novo the legal premises underlying a preliminary injunction, and the decision to grant a preliminary injunction for an abuse of discretion.
 
 FTC v. Enforma Natural Prods., Inc.,
 
 362 F.3d 1204, 1211 (9th Cir.2004);
 
 see also Reebok Int’l, Ltd. v. Marnatech Enters., Inc.,
 
 970 F.2d 552, 563(9th Cir.1992) (“We review the issuance of an asset freeze for an abuse of discretion.”).
 

 III. Discussion
 

 A. Implied authorization to accept service is permitted under the Bankruptcy Rules where service is made in an adversary proceeding on a party’s attorney in the underlying bankruptcy case.
 

 “Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.”
 
 Omni Capital Int’l, Ltd. v. Rudolf Wolff & Co.,
 
 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Rubin contends that service of process on an agent impliedly authorized to accept service on a client’s behalf is impermissible, and, as a result, that the bankruptcy court lacked personal jurisdiction over him. We disagree.
 

 It is undisputed that at the time Mous-seau was served on Rubin’s behalf Rubin resided in France. There is also no dispute that service was not attempted directly on Rubin by the means authorized to serve individuals in foreign countries.
 
 See, e.g.,
 
 Fed. R. Bankr.P. 7004(b)(adopting Fed.R.Civ.P. 4(f), which provides for service on individuals in foreign countries). Instead, the basis for service here is Federal Rule of Bankruptcy Procedure 7004(b)(8), which provides:
 

 [I]n addition to the methods of service authorized by Rule 4(e) — (j) F.R.Civ.P., service may be made within the United
 
 *1082
 
 States by first class mail postage prepaid as follows:
 

 (8) Upon any defendant, it is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent’s dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.
 

 The question before us is whether “an agent of[a] defendant authorized by appointment ... to receive service of process” can include an agent
 
 impliedly
 
 authorized to accept service of process on a client’s behalf.
 

 There appears to be only one circuit court case to address head-on the issue of implied authority to accept service of process. In
 
 United States v. Ziegler Bolt & Parts Co.,
 
 111 F.3d 878 (Fed.Cir.1997), the Federal Circuit stated that “[a]n agent’s authority to accept service may be implied in fact.”
 
 Id.
 
 at 881. In order to find implied authority to accept service of process, the
 
 Ziegler
 
 court said, “the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service.”
 
 Id.
 
 at 881. One additional circuit court has recognized that, at least in theory, implied authority to receive process may be allowed.
 
 See United States v. Balanovski,
 
 236 F.2d 298, 303 (2d Cir.1956) (“The power of attorney granted to Miss Devine by Balanovski at his departure was broad and sweeping in its terms, and an implied actual appointment to receive service of process may be readily spelled out therefrom.”).
 

 Despite the limited body of circuit court authority, numerous bankruptcy and district court cases have held that implied authority to accept service of process is permissible.
 
 See, e.g., Ms. Interpret v. Rawe Druck-und-Veredlungs-GmbH (In re Ms. Interpret),
 
 222 B.R. 409, 416 (Bankr.S.D.N.Y.1998) (“If the purported agent’s activities in the forum are substantial and involve the significant exercise of independent judgment and discretion, service on the agent is valid even in the absence of express authorization to accept process.”);
 
 Luedke v. Delta Air Lines, Inc.,
 
 159 B.R. 385, 395 (Bankr.S.D.N.Y.1993) (“An attorney’s activities on behalf of a client in proceedings in one court may indicate implied authority to receive service of process in integrally related litigation in another court.”);
 
 Olympus Corp. v. Dealer Sales & Serv., Inc.,
 
 107 F.R.D. 300, 305 (E.D.N.Y.1985) (“The authority of an attorney to act as an agent for service of process need not be express and may be implied from surrounding circumstances indicating the intent of the principal (client).”).
 

 In sum, the basic concept that a party’s bankruptcy attorney can be authorized impliedly to accept service of process on the client’s behalf in a related adversary proceeding is neither novel nor inconsistent with general principles of agency law.
 
 See, e.g.,
 
 Restatement (Second) of Agency § 7 cmt. c(noting that actual authority may be conferred either expressly or by implication),
 
 [1]
 
 § 34(stating that the nature and extent of authorization conveyed by principal to agent is “interpreted in light of all accompanying circumstances”) (1958). We find the reasoning of the decisions dis
 
 *1083
 
 cussed above persuasive and adopt their conclusion, holding that in an adversary bankruptcy proceeding, Rule 7004(b)(8)’s designation of “an agent of [a] defendant authorized by appointment ... to receive service of process” can include an agent impliedly authorized to accept service of process on a client’s behalf if (1) the agent is the attorney representing the party in the related bankruptcy proceeding, and (2) the totality of the surrounding circumstances demonstrates the intent of the client to convey such authority.
 

 B. The bankruptcy judge did not err in ruling that Mousseau was impliedly authorized to accept service on Rubin’s behalf.
 

 “The critical inquiry in evaluating an attorney’s authority to receive process is, of course, whether the client acted in a manner that expressly or impliedly indicated the grant of such authority.”
 
 Olympus,
 
 107 F.R.D. at 305. If agency to accept service of process “is to be implied, it must be implied from all the circumstances accompanying the attorney’s appointment which indicate the extent of authority the client intended to confer.”
 
 Nisselson v. Roussopoulos (In re Roussopoulos),
 
 198 B.R. 33, 39 (Bankr.E.D.N.Y.1996) (quoting
 
 United States v. Bosurgi,
 
 343 F.Supp. 815, 817-18 (S.D.N.Y.1972)).
 

 Courts have taken different tacks in evaluating whether a lawyer is impliedly authorized to accept service of process on a client’s behalf. Some courts focus on the scope of the attorney’s activities, and whether the attorney exercised independent judgment on the part of the client.
 
 See Olympus,
 
 107 F.R.D. at 306. Other courts look to the level of the attorney’s involvement in the related proceeding and the extent to which the two proceedings are intertwined.
 
 See Reisman v. First New York Bank for Business (In re Reisman),
 
 139 B.R. 797, 801 (Bankr.S.D.N.Y.1992).
 

 The two cases most often cited for the proposition that authorization to accept service of process can be implied focus primarily on the close relationship between the adversary proceeding and the underlying bankruptcy case and the fact that the attorney served in the adversary proceeding was counsel for the party in the bankruptcy case. In
 
 Paddington Press, Ltd. v. Hill Samuel & Co. (In re Paddington Press, Ltd.),
 
 5 B.R. 343 (Bankr.S.D.N.Y.1980), the bankruptcy court held that “where [the law firm] ... has appeared for the defendants in the [bankruptcy] case and where the instant [adversary] litigation is integrally related to the case, it necessarily appears that such counsel if not expressly, certainly impliedly, was authorized to receive service of process for the defendants.”
 
 Id.
 
 at 345. The bankruptcy court in
 
 In re Reisman,
 
 first observed that “[a]n agent’s authority to accept process on the corporation’s behalf may be implicit or explicit.” 139 B.R. at 800. After concluding that the defendant’s law firm in the adversary proceeding was not explicitly authorized to receive process on the defendant’s behalf,
 
 id.
 
 at 800-01, the court addressed whether the defendant’s law firm was implicitly authorized to accept service,
 
 id.
 
 at 801-02. “When a defendant takes an active role in a [bankruptcy] case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendants.”
 
 Id.
 
 at 801.
 
 See also Bosurgi,
 
 343 F.Supp. at 818 (finding implied authority to accept service of process in a dispute over who had title to disputed funds, where the attorney for the party who was served had been hired to determine the party’s rights as to the money in question).
 

 We agree with the bankruptcy court and the district court that service on Mousseau constituted proper and effective service of process on Rubin. First, as found by the
 
 *1084
 
 bankruptcy court, Mousseau was extensively involved in the underlying bankruptcy proceeding and on several occasions participated on Rubin’s behalf. Mousseau primarily appeared for Focus Media; however, Rubin was the sole shareholder of Focus Media, and Mousseau repeatedly insisted to the bankruptcy judge and other parties to the action that he was also there on behalf of Rubin as Rubin’s “personal lawyer.” Second, there is evidence that Rubin previously had been served with papers in the bankruptcy proceeding in care of Mousseau, and there is no record of Rubin objecting. Finally, and most importantly, Rubin’s own declaration filed in a state court proceeding and signed shortly before the commencement of the adversary proceeding, states:
 

 Geoffrey C. Mousseau, Attorney at Law has been general counsel for Thomas Rubin since September 27, 2000. In his capacity as my general counsel, Geoffrey Mousseau has been consulted on a variety of legal matters and has been made privy to confidential financial, tax and legal information related to myself, the dba and Focus. Mr. Mousseau has assisted me with respect to the pending Focus bankruptcy, as well as the prior actions brought by Sears and other media outlets in State Court.
 

 We recognize that an agent’s authority to act cannot be established solely from the agent’s actions. Rather, the authority must be established by an act of the principal.
 
 See, e.g., Federal Deposit Ins. Corp. v. Oaklawn Apartments,
 
 959 F.2d 170, 175 (10th Cir.1992). Nonetheless, Rubin’s own declaration both corroborates Mousseau’s statements that he was Rubin’s lawyer in the bankruptcy proceeding, and manifests the requisite evidence of authority conveyed by the principal. Viewed in conjunction, these facts lead us to the conclusion that Mousseau can properly be viewed as an agent impliedly authorized to accept service on Rubin’s behalf in the related adversary proceeding. We therefore affirm the bankruptcy court’s ruling that service on Mousseau constituted sufficient and effective service of process on Rubin.
 

 C. Grupo Mexicano does not bar the issuance of a preliminary injunction where, as here, the plaintiff in an adversary bankruptcy proceeding alleges fraudulent conveyance or other equitable causes of action.
 

 In
 
 Grupo Mexicano,
 
 investors sued for breach of contract on secured notes. 527 U.S. at 312, 119 S.Ct. 1961. During the course of the proceedings, the district court granted respondents’ motion for a preliminary injunction and enjoined Grupo Mexicano from transferring away assets.
 
 Id.
 
 On appeal, the Supreme Court reversed the grant of a preliminary injunction, holding that preliminary injunctions may not issue to preserve assets to which a party did not yet have a legal claim.
 
 Id.
 
 at 318-33, 119 S.Ct. 1961. However, the Court specifically excepted from this rule instances of fraudulent conveyance and bankruptcy: “The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct,” i.e., debtors trying to avoid paying their debts, or seeking to favor some creditors over others; “an equitable power to restrict a debtor’s use of his unencumbered property was not.”
 
 Id.
 
 at 322, 119 S.Ct. 1961. Moreover,
 
 Grupo Mexicano
 
 suggests that when equitable claims are at issue, as opposed to solely legal damages claims, the rule barring issuance of a preliminary injunction freezing assets is inapplicable as well.
 
 See id.
 
 at 324-25, 119 S.Ct. 1961 (distinguishing
 
 Deckert v. Independence Shares Corp.,
 
 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940), where “the preliminary injunction ‘was a reasonable measure to preserve the status quo pending a final determination of the questions raised by the bill,’ ” because in
 
 *1085
 

 Grupo Mexicano
 
 the plaintiff had not sought equitable relief).
 
 Grupo Mexicano
 
 thus exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought. The district court therefore correctly found that
 
 Grupo Mexicano
 
 does not bar the grant of a preliminary injunction in this case.
 

 Other circuits to address the scope of
 
 Grupo Mexicano
 
 have noted the limited scope of its proscription on asset-freezing injunctions. For example, in
 
 United States v. Oncology Assocs., P.C.,
 
 198 F.3d 489, 496 (4th Cir.1999), the Fourth Circuit noted that the
 
 Grupo Mexicano
 
 Court “was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed.”
 
 Oncology As-socs.
 
 upheld the issuance of a preliminary injunction freezing assets,
 

 when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the
 
 status quo
 
 pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court’s ability to grant the final relief requested. This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.
 

 Id.
 
 at 496-97;
 
 see also CSC Holdings, Inc. v. Redisi
 
 309 F.3d 988, 996 (7th Cir.2002) (upholding the issuance of a preliminary injunction where equitable relief was sought).
 
 Oncology Assocs.
 
 went on to note that many of the causes of action in the complaint in that case were of an equitable nature,
 
 id.
 
 at 497-98, and further found that the preliminary injunction was a reasonable means of preserving the status quo and was of the same character as the ultimate relief sought,
 
 id.
 
 at 498.
 

 Grupo Mexicano
 
 does not prohibit a preliminary injunction in this case. Prin-gle has pleaded a cause of action for fraudulent conveyance, and a cause of action for constructive trust, which is equitable in nature.
 
 See Great-West Life & Annuity Ins. Co. v. Knudson,
 
 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). Moreover, the relief ultimately sought includes money damages for the fraudulent conveyance and turnover, imposition of a constructive trust, and a permanent injunction' — which are of the same character as the preliminary injunction that the bankruptcy court issued.
 

 As a result, we hold that where, as here, a party in an adversary bankruptcy proceeding alleges fraudulent conveyance or other equitable causes of action,
 
 Grupo Mexicano
 
 does not bar the issuance of a preliminary injunction freezing assets.
 

 D. The bankruptcy court did not abuse its discretion in issuing the preliminary injunction.
 

 To determine whether a preliminary injunction should issue, a court
 

 balances the plaintiffs likelihood of success against the relative hardship to the parties. To receive a preliminary injunction, [a plaintiff is] required to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. These two alternatives represent extremes of a single continuum, rather than two separate tests.
 

 Sun Microsystems, Inc. v. Microsoft Corp.,
 
 188 F.3d 1115, 1119 (9th Cir.1999) (internal citations and quotations omitted).
 
 *1086
 
 We affirm the bankruptcy court’s issuance of the preliminary injunction on the first of these grounds, and consequently hold that the bankruptcy court did not abuse its discretion in issuing the injunction.
 

 To establish a substantial likelihood of success on the merits, Pringle must show “a fair chance of success.”
 
 Republic of the Philippines v. Marcos,
 
 862 F.2d 1355, 1362 (9th Cir.1988) (en banc). At the TRO hearing, the bankruptcy court found that Rubin had received around $20 million from Focus Media, that this money was likely a shareholder dividend, and that Focus Media was unable to pay its creditors due to their payment to Rubin. These findings, which are not clearly erroneous, raise the likelihood of Pringle’s success on the merits, as they suggest that Rubin impermissibly took funds from Focus Media that were needed to pay Focus Media’s creditors.
 
 See United States v. Neidorf,
 
 522 F.2d 916, 917 (9th Cir.1975) (concluding that allegation that corporation had been rendered insolvent by distributions to shareholders stated a cause of action for fraudulent conveyances);
 
 see also id.
 
 at 918 (“complaint also states a cause of action against ... shareholders for recovery of distributions that rendered the corporation insolvent”).
 

 The bankruptcy court also noted the testimony of Focus Media’s chief financial officer, Thomas Sullivan, who stated that Rubin had received around $25 million in transfers from Focus Media “shortly before the involuntary was filed.” Rubin does not contest this finding on appeal, nor does it appear to be clearly erroneous. That Rubin may have taken money from Focus Media immediately prior to the involuntary bankruptcy proceeding’s commencement suggests the possible impropriety of this transfer and again points to the likelihood that Pringle may succeed on the merits.
 
 See
 
 11 U.S.C. § 548(a)(1);
 
 Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.),
 
 52 F.3d 228, 230 (9th Cir.1995) (“A trustee is empowered to challenge every transfer made by a debtor to a creditor during the ninety day period immediately prior to the filing of a bankruptcy petition. This avoidance power enables the trustee to protect the estate of the debtor and to ensure an equitable distribution among the unsecured creditors.”) (citation and footnote omitted).
 

 There is also evidence in the record that in the past Rubin made away with Focus Media funds, suggesting that he may do the same with respect to the funds that Pringle seeks to recover. This raises the specter of irreparable harm to the bankruptcy estate if these funds are not frozen. For example, Pringle’s attorney at the TRO hearing indicated that at the beginning of the bankruptcy case he was told that Focus Media had $3 million in assets and that none of those funds would be touched; but “[b]y the time we got there, there was slightly over a million dollars” left. Pringle’s attorney submitted other evidence of dissipation of Focus Media’s assets as well.
 

 The bankruptcy court found that “that is substantial evidence that assets were being dissipated by Focus. Mr. Rubin is the shareholder of Focus. So the Court would infer from that that Mr. Rubin was causing the dissipation of the assets.” The bankruptcy court further noted “that Mr. Rubin, who had the power to receive the money and did receive the [$]25,000,000, instead of it going to pay the creditors, was controlling Focus Media.” The findings have not been shown to be clearly erroneous.
 
 Cf. FTC v. Affordable Media, LLC,
 
 179 F.3d 1228, 1236-37 (9th Cir.1999) (concluding that given petitioners’ history of spiriting away funds, the district court’s finding that they were likely to dissipate assets was not clearly erroneous);
 
 FDIC v. Garner,
 
 125 F.3d 1272, 1279-80 (9th Cir.
 
 *1087
 
 1997) (giving “substantial deference” to lower court’s finding that there was “at least a possibility” of dissipation of assets absent an asset-freezing injunction, and consequently concluding that the possibility of irreparable injury had been adequately demonstrated).
 

 We therefore hold that the bankruptcy court did not abuse its discretion in issuing the preliminary injunction freezing $20 million in Rubin’s assets.
 

 IV. Conclusion
 

 “[A]n agent of [a] defendant authorized by appointment ... to receive service of process,” Fed. R. Bankr.P. 7004(b)(8), can include an agent impliedly authorized to accept service of process on a client’s behalf, where counsel served in the adversary proceeding is involved in the underlying bankruptcy case and if the totality of the surrounding circumstances demonstrates the intent of the client to convey such authority. Applying that principle, the bankruptcy court did not abuse its discretion in finding that Mousseau was impliedly authorized to accept service on Rubin’s behalf.
 
 Grupo Mexicano
 
 exempts from its proscription on preliminary injunctions freezing assets cases involving bankruptcy alleging fraudulent conveyances or other equitable causes of action. Finally, the bankruptcy court did not abuse its discretion in issuing the preliminary injunction in this ease.
 

 For the foregoing reasons, we affirm the bankruptcy court’s issuance of the preliminary injunction.
 

 AFFIRMED.
 

 [1]
 

 . The commentary to section 7 states in pertinent part: "c.
 
 Express and implied authority.
 
 The manifestation [of consent] may be made hy words or other conduct, including acquiescence.”