Jacob BEHYMER–SMITH, a Minor, By
and Through his Guardian ad Litem,
Patience BEHYMER, Plaintiff,

v.

CORAL ACADEMY OF SCIENCE, Ste-
ven J. West, Ben Karaduman and
Cheryl Garlock, Defendants.

No. 3:06–CV–206–BES(RAM).

United States District Court,
D. Nevada.

April 13, 2006.

Diane K. Vaillancourt, Law Office of Diane K. Vaillancourt, Santa Cruz, CA, Terri Keyser-Cooper, Reno, NV, for Plaintiff.

John Ohlson, Osborne, Ohlson & Hall, Reno, NV, for Defendants.

## TEMPORARY RESTRAINING ORDER

SANDOVAL, District Judge.

Before this Court is Plaintiff's Emergency Motion for a Temporary Restraining Order (# 2), filed on April 11, 2006. A hearing on this matter was held on April 12, 2006 and was attended by the parties and their legal counsel.

Upon consideration of Plaintiff's Motion, the supporting evidence, the evidence presented at the hearing, and for other good cause shown, the Court finds that Plaintiff's Emergency Motion for a Temporary Restraining Order should be granted.

## I. BACKGROUND

Plaintiff, a ninth-grader at the Coral Academy of Science, is a finalist in the state *Poetry Out Loud* competition. On April 22, 2006 he is scheduled to compete against other high school students in the state finals in Carson City, Nevada. If he wins, Plaintiff will proceed to the national finals in Washington, D.C. in May. The competition is sponsored by the National Endowment for the Arts and the Poetry Foundation, which published an Anthology of 140 approved poems that may be recited by competition participants. (# 2, Ex. 3). The Anthology contains a great variety of classic and contemporary poetry. One of the two poems Plaintiff has chosen from the Anthology to recite on April 22 is *The More Loving One* by W.H. Auden. At the hearing, Plaintiff testified that he has practiced the Auden poem twice a day for over two months in order to perfect the poem for the upcoming state competition. The Auden poem was first recited by Plaintiff on March 17, 2006 in a school competition that took place in the Coral Academy's school cafeteria. The poem contains the words "hell" and "damn", but the parties do not dispute that Plaintiff's recitation of these words did not incite any disruption or unpleasantness from the student audience.

Following Plaintiff's recitation of the Auden poem on March 17, the Dean of Students, Defendant Cheryl Garlock, sent an email to Andrea Ladouceur, the Chair of the English Department, objecting to the Auden poem because it contains "inappropriate language" and the school intends to only present "pristine language to [its] students." (# 2, Ex. 6). At the hearing, Ms. Ladouceur testified that in January of 2006, prior to the commencement of the poetry competition, she had presented the Anthology containing the competition poems to Coral Academy administration, seeking their approval. Ms. Ladouceur testified that, at that time, the administration did not object to any of the poems.

On April 5, 2006, Plaintiff recited his two poems, including the Auden poem, at a district-wide competition held in downtown Reno. The day after the competition (in

which Jacob placed first), Defendant Steven West, Dean of Human Resources, issued a formal reprimand to Plaintiff's teacher and other English teachers, because Plaintiff was not prohibited from reciting the Auden poem (# 2, Ex. 9–11). Thereafter, on April 7, 2006, Plaintiff was informed by Mr. Smith, his English teacher, that he would not be able to perform the Auden poem at the state competition. (Dec. of Jacob Behymer–Smith, Doc. # 2, Ex. 1, ¶ 11). On that same day, Plaintiff was told by Dr. West that he must choose another poem because the Auden poem contained "profanity." (*Id.*, ¶ 12). Thereafter, on April 10, 2006, Defendants West and Garlock, along with Defendant Ben Karaduman, the Executive Director of the Coral Academy, jointly issued a Weekly Memo to faculty and staff, in which they generally condemned the use of "inappropriate" language by teachers and students. (# 2, Ex. 13). Specifically, teachers were advised to not allow students to "use poor language in public events." *Id.*

Plaintiff filed a Complaint and his Emergency Motion on April 11, 2006, claiming that the school and the administrators' prohibition violates his First Amendment right to free speech.

## II. ANALYSIS

The Ninth Circuit recently reiterated the two sets of criteria for granting preliminary injunctive relief. *Earth Island Inst. v. United States Forest Serv.,* 442 F.3d 1147, 1158 (9th Cir.2006) (for publication). Under the traditional criteria, a court may grant a preliminary injunction if the moving party shows "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to [the moving party] if preliminary relief is not granted, (3) a balance of hardships favoring the [moving party], and (4) advancement of the public interest (in certain cases)." *Id.* (quoting *Earth Island Inst. v. United States Forest Serv.,* 351 F.3d 1291, 1297 (9th Cir.2003)). Alternatively, a court may grant a preliminary injunction if the moving party "demonstrates *either* a combination of probable success on the merits and the possibility of irreparable harm *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* at 1158–59.

### A. Likelihood of Success on the Merits

To establish a substantial likelihood of success on the merits, the moving party must show a fair chance of success on its claims. *In re Focus Media Inc.,* 387 F.3d 1077 (9th Cir.2004). Although public school officials typically have broad discretion in the management of school affairs, the United States Supreme Court has stated that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Three areas of student speech have been identified and discussed by the Supreme Court:

(1) vulgar, lewd, obscene, and plainly offensive speech,

(2) school-sponsored speech, and

(3) speech that falls into neither of these categories.

*Frederick v. Morse,* 439 F.3d 1114, 1121 (9th Cir.2006). The Supreme Court enables schools to prevent only the sort of vulgar, obscene, lewd, or sexual speech that, especially with adolescents, "readily promotes disruption and diversion from the educational curriculum." *Frederick,* 439 F.3d at 1122, n. 44 (citing *Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)). Plaintiff's recitation of Auden's poem, which includes the words "damn" and "hell," does not constitute speech that can

be considered vulgar, lewd, obscene, or offensive. Indeed, Defendants did not argue at the hearing that Plaintiff's recitation of the Auden poem was offensive or disruptive in any way.

 Plaintiff's recitation of the poem at the state competition in Carson City also cannot be classified as school-sponsored speech, because the competition is not "to be part of the educational curriculum and a regular classroom activity." *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 268, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). Rather, Plaintiff's recitation of the Auden poem at the state competition in Carson city is a non-curricular activity that is only partially supervised by school officials. The competition is sponsored by the National Endowment for the Arts and the Poetry Foundation, and the poem at issue will be recited by Plaintiff off school grounds and on a non-school day.

 Plaintiff's recitation of the poem falls into the third category of speech—student activity that can be censored or punished only if the school can show a "reasonable concern about the likelihood of substantial disruption to its educational mission." *Frederick,* 439 F.3d at 1123. The Court perceives no likelihood that Plaintiff's recitation of Auden's poem will interfere with the school's basic educational mission. Where, as in this case, there is "no finding and no showing that engaging in the forbidden conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school, the prohibition cannot be sustained." *Jacobs v. Clark County School Dist.,* 373 F.Supp.2d 1162, 1175 (D.Nev.2005) (quoting *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)). Defendants apparently consider the poem inappropriate because it contains language that conflicts with the school's policies against students' general use of profanity. However, when spoken in the context of a poem recited at a school-authorized, off-campus student competition and written by a nationally-recognized poet, the Court finds that the language sought to be censured by Defendants cannot even remotely cause a substantial disruption of the educational mission.

In the total absence of any evidence indicating that the Defendants' prohibition of Plaintiff's recitation of the Auden poem is constitutionally permissible, the Court finds that Plaintiff has shown a high probability of success on the merits of his claim that Defendants have violated his First Amendment rights.

**B. Irreparable Injury, the Balance of Hardships and the Public Interest**

 Because Plaintiff can show a strong likelihood of success on the merits of his First Amendment claim, he need only show the possibility of irreparable injury if preliminary relief is not granted, and that the balance of hardships tips in his favor. Furthermore, because this case involves a constitutional right that implicates public interest concerns, the Court must also determine whether the public interest favors the Plaintiff.

 In the Ninth Circuit, a party seeking preliminary injunctive relief in a First Amendment context "can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *See Sammartano v. First Judicial District Court,* 303 F.3d 959, 973 (9th Cir. 2002). In fact, the United States Supreme Court has made it clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of granting injunctive relief. *Elrod v. Burns,*

427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see also S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1148 (9th Cir.1998) (holding that a civil liberties organization that had demonstrated probable success on the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm). The fact that this case raises serious First Amendment questions compels a finding that there exists "the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [Plaintiff's] favor." *Sammartano,* 303 F.3d at 973. Accordingly, the Court finds that Plaintiff has demonstrated that he would experience irreparable harm if a restraining order is denied, and that this harm is much more serious than the hardship Defendants have shown they would endure if the restraining order were granted.

■■■■ Finally, the Court finds that because public interest concerns are always implicated when a constitutional right is involved, and that Plaintiff has shown a likelihood of success on the merits of his First Amendment claim, the public interest also warrants issuance of a restraining order. *See Id.* at 974–75 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles").

## III. CONCLUSION

The Court's examination of Plaintiff's probability of success on the merits, the balance of the hardships, and the public interest leads the Court to conclude that Plaintiff has a right to injunctive relief. Accordingly,

IT IS THEREFORE ORDERED that Plaintiff's Emergency Motion for a Temporary Restraining Order (# 2) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants, and any other agents, representatives and all other persons or entities acting in concert with them or on their behalf, are restrained and enjoined from prohibiting Jacob Behymer–Smith from reciting Auden's poem, *The More Loving One,* at the *Poetry Out Loud* competition on April 22, 2006.

IT IS FURTHER ORDERED that Plaintiff shall post a nominal bond of one hundred dollars ($100.00) because the evidence indicates that Defendants will suffer little, if any, damage by the issuance of this temporary restraining order. *See Barahona–Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir.1999) (the requirement of a nominal bond amount was within the court's discretion where the court found that any cost to the government, in the event it was found to have been wrongfully enjoined, would be minimal and the case involved the public interest).

The temporary restraining order issued herein will be effective for ten days from today, up to and including April 23, 2006, unless within such time the order is extended for good cause shown, or unless Defendants consent to an extension.

IT IS SO ORDERED.