**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 18 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| THE WIMBLEDON FUND, SPC CLASS TT,<br><br>　　　　Plaintiff - Appellee,<br><br>v.<br><br>GRAYBOX, LLC,<br><br>　　　　Defendant - Appellant. | No. 15-56540<br><br>D.C. No. 2:15-cv-06633-CAS-AJW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted April 5, 2016
Pasadena, California

Before: FARRIS, TYMKOVICH[**], and M. SMITH, Circuit Judges.

Defendant-Appellant Graybox, LLC (Graybox) appeals from the district

court's grant of a preliminary injunction. We  affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Timothy M. Tymkovich, Chief Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

**1.** "We review a district court's grant or denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011). Graybox argues that pursuant to *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund., Inc.*, 527 U.S. 308 (1999), a preliminary injunction is not available because Plaintiff-Appellee The Wimbledon Fund, Spc Class TT (Wimbledon) had no lien or other equitable interest in the funds. But *Grupo Mexicano* specifically expressed "no opinion" on cases arising under the Uniform Fraudulent Conveyance Act, which "may have altered the common-law rule that a general contract creditor has no interest in his debtor's property." *Id.* at 324, n. 7.

Accordingly, we have held that "*Grupo Mexicano* thus exempts from its proscription against preliminary injunctions freezing assets cases involving bankruptcy and fraudulent conveyances, and cases in which equitable relief is sought." *In re Focus Media Inc.*, 387 F.3d 1077, 1085 (9th Cir. 2004); *Johnson v. Couturier*, 572 F.3d 1067, 1084 (9th Cir. 2009). Because this is a fraudulent conveyance case and one in which Wimbledon sought equitable relief, *Grupo Mexicano* does not bar a preliminary injunction. *Focus Media*, 387 F.3d at 1085.

**2.** Graybox argued that the injunction violated a bankruptcy stay because $200,000 of the funds frozen by the district court's injunction were owed to a

bankruptcy trustee in another matter. Assuming arguendo that a bankruptcy stay had been implicated, the preliminary injunction affected only $2,412,000 of the $2,900,000 available, which left ample funds to pay the trustee.[1]

**3.** The district court did not err in granting the preliminary injunction under the California Uniform Fraudulent Conveyance Act. Under the Act, a transfer is fraudulent if made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). California Civil Code § 3439.04(b) provides a list of non-exclusive factors that a court may consider to determine whether a transfer was made with such "actual intent."

The district court determined that, inter alia, the following factors were present: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer . . . (5) the transfer was of substantially all of the debtor's assets . . . (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, and (10) the transfer occurred shortly before or shortly after a substantial debt was incurred. We review

---

[1] Further, as Graybox's counsel acknowledged at oral argument, the trustee has in fact been paid, so its claim can no longer present any barrier to a preliminary injunction.

these findings for clear error, *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014), and hold that they are not clearly erroneous.

In addition to showing likelihood of success on the merits, "[a] plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to irreparable harm, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson,* 572 F.3d at 1085 (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003)). Here, Graybox acknowledged that it intended to dissipate the assets to related entities, although it contended that much of the money was ultimately for the benefit of non-related entities.

As to the balance of equities, the district court evaluated Graybox's argument that multiple third parties would be affected by a freeze of the settlement proceeds. The district court did not clearly err in finding that the third parties were in fact related to Graybox or its principal, David Bergstein, and that Graybox had

4

not shown that the attorneys who submitted declarations asserting that they were owed fees were in fact so entitled.

And, the district court did not clearly err in finding that the hardship to these Graybox-affiliated entities and individuals did not outweigh the harm to Wimbledon. Bergstein structured the settlement to direct the settlement proceeds to Graybox "as a matter of convenience." This is consistent with Bergstein's prior use of Graybox funds to pay his personal entertainment and gaming expenses, and many others of a "highly private" and "personal" nature, "including but not limited to payments to lawyers, investment activities, mortgage payments, rent payments, charitable donations, and transfers of investment proceeds to/from [Bergstein] and [his] wife." And on Wimbledon's side of the scale, Graybox identified no other avenue through which Wimbledon could recover on its claim.

Finally, Graybox argued that an injunction would negatively impact the public interest because it would interfere with the litigation settlement. The district court did not clearly err in determining that due to the relationship of the potentially affected parties with Graybox, the public interest was not a significant factor, and did not weigh against the issuance of an injunction.

As all factors weighed in favor of a preliminary injunction, the district court did not abuse its discretion in issuing one.

Appellant's November 11, 2015 motion to supplement the excerpts of record is granted.

**AFFIRMED**